United State District Court for
The District of New Jersey

---

| | |
|---|---|
| John E. Reardon | : Civil Case No._____ |
| | : |
| Plaintiff, | : |
| | : |
| Vs | : |
| | : |
| The "John, Jane Doe" Ambulance | : Proposed Lawsuit, Exhibit Only |
| Crew and the Emer gency Room | : |
| Hospital Staff of Our Lourdes Hospital | : |
| and said Hospital Police Officers of | : |
| Runnemede—Sgt. A. L. Simon, Chief | : |
| Leason, Officier Diano, Dougherty, | : |
| Mondelli, Pfieffer  and Police Officers | : |
| Romano and Muller of Bellmawr, D, | : |
| Sgt. Dawson of the N.J. State Police | : |
| Bomb Squad, "John-Jane Doe Postal | : |
| Inspectors,and ATF", Mr. Wlashe and | : |
| Farmer, Sheriff Simon. Michael | : |
| Keating, Civil and Criminal Docket | : |
| Clerks, Judges Steinberg and Greene | : |
| | : |
| Defendants. | : |

Jurisdiction/Authority

I) Jurisdiction and Authority of this court comes by way of the Following:

1. 28 U.S.C. § 1331, § 1343, § 1367, § 2201 and § 2202.

2. 42 U.S.C. § 1983, § 1986 and § 1988.

3. This court's pendent jurisdiction over related state claims.

4. 18 U.S.C. § 241, § 242, § 1961, et seq and § 3161.

5. N.J.S.A. 2C:41-1 et seq.

6. The criminal and civil Common Law of the State of N.J. and the United

States.

7. U.S. Constitutional Amendment 7.

8. Art. III of the U.S. Constitution. And

1

9. Any other Lawful authority which may be or is applicable but has not yet been cited or which may not yet be known to the plaintiff.

The Bases For This Suit are:

1. Trespass of the person—False Imprisonment/kidnaping.

2. Trespass of the case---Fraud, Deceit, negligence—failure to properly supervise and/or train, malicious prosecution, abus of process and slander/liable;

3. Debt—Common law state right to recover criminal fine/penalty as compensation, for violation of law and trespass of rights and for the loss of Money from my then job, fines and attorney fees;

4. Detinue/Repliven—wrongful detention and seizure of property or negligence in the care of property in ones lawful custody/care;

5. Assumpsit/Special Assumpsit— Breach of implied and oral contract and Failure to perform or specifically perform; and

6. Engaging in, continuing with, or aiding and association with an ongoing RICO enterprise and related activities.

II) Statutory and Constitutional Rights And/or Provisions Involved,

U.S. Constitution:

1. Art. III, Sec.. 2;

2. Art. IV, Sec.s 1 & 2;

3. Art. VI, para. 2;

4. Amendment 1 by way of the 14th Amendment;

5. Amend, 2;

2

6. Amendment IV by way of the 14th Amendment;

7. Amendment V by way of the 14th Amendment;

8. Amendment VI by way of the 14th Amendment;

9. Amendment 7;

10. Amendment 8 by way of the 14th Amendment;

11. Amendment 9;

12. Amendment 10 And

13. Amendment 14 equal protections and due process clauses.

New Jersey Constitution:

1. Art. XXII of the 1776 Constitution by way of Art. 1, clause 21 of the 1844and 1947 N.J. Constitutions;

2. Art. XI of the 1844 N.J. Constitution.

3. Art. 1, Clause 9 of the 1844 and 1947 N.J. Constitutions along with Clause 21 thereof;

4. Art. 7, Sec. 1-1 of the 1947 N.J. Constitution;

5. Art. 11, Sec. 4-8 of the 1947 N.J. Constitution;

6. Art. 1, clause 7 of the 1947 N.J. Constitution; and

7. Art. 1 and the related State Constitutional clauses relating to numbers (I), (2), (4)-(9), (11) and (13) above

III) Federal Statutes involved:

1. 18 U.S.C. § 241, § 242, & § 1961, et seq. And § 3161;

2. 28 U.S.C. § 1331, § 1343, § 2201 and § 2202;

3

3. 42 U.S.C. § 1983, § 1985(2) and (3), § 1986 and § 1988;

IV) State Statutes involved: ( All are N.J.S.A.):

    1. 2A:8-27;

    2. 2A:13-1;

    3. 2A:15-49;

    4. 2A:16-50, et seq;

    5. 2A:18-10;

    6. 2A:67-1, et seq;

    7. 2A:151-41 and -56;

    8. 2A:158-3, -5 and -15;

    9. 2A:158A-5 and -8;

    10. 2A:170-17;

    11. 41:1-1, -2 and -3;

    12. 2C:1-6(g);

    13. 2C:1-14(g);

    14. 2C:2-6(a), (b) and (c)(1)(b) and (c)(1)(c);

    15. 2C:5-1(a)(1)-(3) and (c);

    16. 2C:5-2(a)(1) and (2);

    17. 2C:13-1(a), (b)(1) and (3)(c) and (d);

    18. 2C:13-3;

    19. 2C:15-1(a)(3);

    20. 2C:18-2(a)(1) and (b)(2);

21. 2C:18-3(a);

22. 2C:20-2(a) And (b)(2);

23. 2C:20-3(a);

24. 2C;20-4(a)-(c);

25. 2C:20-5(b), (d) & (f);

26. 2C:21-3(b);

27. 2C:21-4(a);

28. 2C:28-1;

29. 2C:28-2(a)-(c);

30. 2C:28-4(a) & (b)(2);

31. 2C:28-6(a) & (b);

32. 2C:28-7(a)(1)-(3);

33. 2C:29-1;

34. 2C:29-3(a)(2), (4), (5) (7) and (b)(1);

35. 2C:30(2)(a) and (b);

36. 2C:39-3, -10 and -12;

37 . 2C:41-1;

38. 2C:58-7(a) & (c).

V) Constitutional Rights involved:

1. 1st Amendment Access to the Courts;

2. 2nd Amendment rights regarding weapons;

3. 4th Amendment rights against unreasonable searches and seizures;

4. 6th Amendment right to speedy trial and adequate Counsel;

5. 8th Amendment right to reasonable bail and against cruel and unusual punishment;

6. 7th Amendment right to civil trial issues;

7. 9th and 10th Amendment issues;

8. All related state issues to the above issues;

9. Right to have agents who will forthrightly, diligently and intelligently carry out their duties to the law and the public/people with integrity;

10. Right against prosecution except by the plain and solemn averment of at least 2 honest and reputable witnesses to the overt act(s).

11. Right to a jury of ones peers;

12. Right to have a jury that determines the law and facts;

13. Right to have a jury who will decide all cases involving the rights and questions of rights of the people;

14. The right to bring, prefer and prosecute criminal charges of any type, direct or counter, against any person be they private or public officials;

15. The right to have a jury to tri all issues in dispute between the parties at one time, civil, criminal, equitable, mixt or other;

16. The right to be protected from the passage of and enforcement of state statutes which in any way infringe upon the rights of the citizens;

17. Denial of due process with respect to:

A. Access to the courts;

6

B. To be heard;

C. To speedy trial;

D. to adequate Counsel;

E. To reasonable bail;

F. To a complete defense;

G. To petition for redress of grievance;

H. To appellate review.

I. To search and seizure.

J. Notice of the specific facts to the indictment and at trial.

K. To a probable cause hearing.

L. Right to not be prosecuted upon an indictment that does not state the specifics of the charges.

M. To immunity if there is not at least 2 witnesses to the overt act.

18. Denial of the equal protections of the laws as per the rights listed in #17 above;

19. The right to property; and

20. The right to choice of counsel and/or to plead any persons case whether one is a licensed attorney or not.

### Parties

1. The plaintiff John E. Reardon resides at 1 Joans Lane; Berlin, N.J. 08009.

2. The defendants Romano and Muller reside at the Police Department of

7

Bellmawr, N.J. on Browning Road; Bellmawr, N.J. 08031.

3. The other Police defendants reside at 24 North Black Horse Pike; Runnemede, N.J. 08078.

4. All other defendants whereabouts are unknown at the present.

### Facts

1. That the well settled law is that something that is unconstitutional is unconstitutional from the day of the event and not the day it is declared to be so and this court and judges are required to know the law, obey the law and are supposed to be experts in the law and the State court failed to demonstrate this knowledge.

2. That the disqualification of judges is what the average or reasonable detached person would say and that an average and reasonable person, agrees that Judges Greene and Steinberg should have recused themselves on their own motions.

3. That all judges, attorneys and parties either knew all the above law and criteria and did intentionally ignore and violate it and injure Mr. Reardon which required them to recuse themselves due to bias/animus against Mr. Reardon for having sued several Judges and other government officials or they did not know this law which would show their lack of knowledge and incompetence to sit and take actions in the proceedings against Mr. Reardon and again they were required to recuse themselves and not to injure Mr. Reardon and again they deliberately

8

injured **Mr. Reardon** in his person, rights and property.

**4.** The plaintiff takes issue with the actions and decisions of the defendants in accordance with the laws cited in this complaint to show that the law suits filed against them, coupled with their decisions and actions contrary to the law and plaintiff's rights shows that the defendants were in fact biased against the plaintiff and that said bias was either wilful, knowing, intentional, which required them to recuse themselves and lose personal, and thus all, jurisdiction, or the actions taken were due to their incompetence in that they did not know the law and for which this failure was knowing, wilful or intentional as to not recusing themselves and lost personal, and thus all, jurisdiction or they in fact conspired together to deny the plaintiff in his person, property and rights without regard to or for the law which again required them to recuse themselves and lose personal, and thus all, jurisdiction. As former U.S. Supreme Court Justice Joseph Story said in his constitutional commentaries, "there is no such thing as a mistake for a judge as he is trained in the Law and required to know it". Thus, these failures are in contradiction to the laws and rights of the plaintiff and there is no excuse for any of the defendants to commit the "errors" they did as they are trained in the law and required to know it. Just as a doctor learns in college his knowledge to practice medicine and he has to keep abreast of the changes in treatments for the sick or ill, his learning never ceases just as the defendant's learning never ceases. But more importantly the law is old law they learned of in College which given now their mistakes, these mistakes,

9

given that they were sued, gives legal credence that they knowingly, intentionally and willfully injuring **Mr. Reardon** to get back at him for all the lawsuits he filed against all the various State Officials and to teach him a lesson.

5. The **State of New Jersey** did not follow the **common law** on **perjury** as they maintained the right to **sue and recover** the **Losses** that the **perjuror** gained and would be subject to the same punishment that was inflicted upon the injured party. See **1676 Concessions and Agreements of West, New Jersey, CHAP. XX and The Funda -mental Constitutions for the Province of East New Jersey in America, Anno Domini 1683, Article XX and The Savings Clause of the New Jersey Constitution, Article 1, Clause 21** and *U.S. v Jepson, 90 F. Supp. 980, 988-990 Citing the New Jersey Supreme Court case of Holmes v Walton, 1780* and the injured party was allowed to recover monetarily the amount of money he lost due to the *perjury*.

6. The plaintiff raises issue for the 1st time as to the *INVALIDITY OR VOID* **Proceedings before Judge Greene and Steinberg** based on the **Common Law of England** dating back to 1852. See *Regina v O'Grady, 7 Cox C.C. 247, 1857; The Queen v The Justices of Suffolk, 18 Q.B. 416 ; Q. B. EASTER TERM., April 29th, 1852; The Queen v The Justices of London, London,18 Q.B. 421, April 29th, 1852 and Whitman v Thompson @457-467.*

**Judge Steinberg** did also commit and make a false court record by signing and approving the 6/21/90 and 6/29/90 search warrants in the record which failed identify the pre-search facts of the search: *State v Fariello, 71 N.J. 52, 558-560 snd M.P. v S.P., 169 New Jersey Super. @ 434-435 & 441-443 (1979):*

10

A. What the criminal implements were the police were searching for.

B. What lead them to believe they existed.

C. What lead them to believe they would be in plaintiff's apartment. And

D. Completely failed to identify any facts supporting exigency to conduct *a warrantless search. [See attached affidavits of 3 Average persons. N.J.S.A. 2C:58-7(a) and (c).]*

E. The affidavit failed, under the particulars of this Lawsuit, to set forth the basis as to the belief the Police Knew I had a live and armed bomb in my apartment that could cause harm to other's or that there was some way in which evidence could be lost or destroyed if an immediate Warrant-less search was not done.

7. The Plaintiff was not adequately apprised of the intended changes in the Rules of Court and he would have raised all Constitutional Issues at once had he known of the intended changes and the failure to apprise the plaintiff or the Public and resulted in the right of the plaintiff to seek redress in the state due to the violations of the Plaintiff's rights as set out in the 2nd PCR and in this complaint, to be denied based upon the Rule Changes. See *Wright v. Georgia, 373 US 284, 291, 1963 and NAACP v Alabama ex rel. Patterson, 357 US 449, 457, 1958.* Law and Actions of Judges in General.

8. These Judges Did Lose or Usurp their jurisdiction as follows: Bouvier's Dictionary, Third Revision, 8th Edition, 1984 Reprint, Page 3387, *Valid.* Having force or binding force; Legally sufficient or efficacious; authorized by law.

Page 1680, *Invalid:* Not valid; of no binding force; Page 2384, *Null: Properly*, that
which does not exist; that which is not in the nature of things. In a figurative
sense it signifies that which has no more effect than if it did not exist. 8 Toulier,
n.320; Page 3406, *Void:* that which has nol force or effect. New World Dictionary,
Second College Edition, 1972 Copyright; Page 445, *Efficacious;* To bring to pass,
accomplish, producing or capable of producing the effect; having the intended
result; effective.

Liteky v U.S., 510 U.S. 540, 544-545, 562-563, 1993, if a judge has extra
judicial contact with a party before him he *must* recuse himself.

State v Utsch, 184 N.J. Super.,175,181,1982, N.J. Appellate; State v Tucker,  264

N.J. Super. 549, 555, N.J. App. 1993:

Court Must recuse itself on its own motion.

Failure to recuse causes loss of Subject Matter Jurisdiction. The Queen v

The Justices of Suffolk, 18 Q.B. 416, 1852; The Queen v The Justices of London,

18 Q.B. 421, 1852; Regina v O'rady, 7 Cox C.C. 247, 1857.

Panitch v. Panitch,770 A. 2d 1237, 1239,N.J. App. Div .2001; Chandok  v.

Chandok, 968 A.2d 1197-1198,NJ:Appellate Div. 2009.

[if a] judge fails to acknowledge a disqualifying predisposition or circum-
stance an Appellate court *Must* order recusal no matter what the source.

Bradley v Fisher, 80 US 335, 1872:

A distinction must be here observed between excess of jurisdiction and the
clear absence of all jurisdiction over the subject-matter. Where there is
clearly no jurisdiction over

352:

12

the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible.

Zeller v Rankin, 101 S.Ct. 2020, 1981:

when a Judge Lacks Jurisdiction and he knows it, he Loses Judicial Immun -ity.

Denike v Cupo, 196 N.J. 502, 507, 2008, Supreme Court:

a court has a *Duty* to avoid even the appearance of partiality.

Neder v United States, 527 US 1, 8, 1999:

Void proceedings based on refusal to recuse *requires* reversal.

State v Gioe, 950 A.2d 930, 936, N.J. App. 2008:

failure to recuse voids judgments and orders.

Caperton v Massey Coal CO., 129 S.Ct. 2252, 2254-2252, 2259-2260 and 2263, 2009:

Failure to recuse violates Due Process.

United Student Aid Fund v Espinosa, 130 S.Ct. 1367, 1377, 2010:

A void judgment is a legal nullity. See Black's Law Dictionary 1822 (3d ed.1933); see also id., at 1709 (9th ed.2009). Although the term "void" describes a result, rather than the conditions that render a judgment unenforceable, it suffices to say that a void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final.

Instead, Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard.

Definition of Must:

Generally refers to a mandatory requirement; imposes a duty or grants a right which is mandatory or imperative.

13

"Mandatory" refers to something that is required, and not optional or subject to discretion.

Definition of Tyrant:

1. The chief magistrate of the state, whether legitimate or otherwise, who violates the constitution to act arbitrarily contrary to justice. Toull. tit. prel.n. 32.

2. The term tyrant and usurper, are sometimes used as synonymous, because usurpers are almost always tyrants; usurpation is itself a tyrannical act.....

3. This term is sometimes applied to persons in authority who violate the laws and act arbitrarily towards others. Vide Despotism.

Definition or Requires:

Implies something mandatory, not something permitted by agreement.....

Definition of Shall:

As used in statutes and similar instruments, this word is generally imperative or mandatory

Legal Definition of Duty:

A legal obligation that entails mandatory conduct or performance.

a legal obligation, the breach of which can result in liability.

Legal Definition of Obligation:

The popular meaning of the term "obligation" is a *Duty* to do or not to do something.

These **Judges** did sit on the **Plaintiff's** criminal proceedings when they were

required by law to recuse themselves and they did not so do which in turn made all

proceedings before these **Judges** *Invalid or Void* and that being such, they did lose,

lack or usurp their **Jurisdiction** and the **Plaintiff's criminal proceedings** are in fact

14

invalid or void and these Judges are liable for usurping their jurisdiction. See Case Law cited in Statements 1 & 3 above, the Legal Definitions in this Statement and the following other Case laws. See *United Student Aid Funds, Inc. v. Espinosa, 130 S.Ct. 1367, 2010;* Bradey v Fisher, 80 U.S. (13 Wall) @ 351; Elliot v Piersol, 1 Pet. 328, 340; *State v Utsch, 184 N.J.Super. 575,* 581; *Pierson v Ray, 386 U.S. 547, 567,1967; Briscoe v LaHue, 103 S.Ct. 1108, 1155, 1983.* Congressional Globe, 1866 @ page 1778 (Senator Johnson) and Mr. Lawrence 39th Congress, 1st Session, April 7, 1866, Congressional Globe @1837.

Since the Appellate court found that recusal must be ordered, they Usurped their own discretion based on their own Mandate.

9. Sgt. Simon and Judge Steinberg had a covert meeting of the minds to injure the plaintiff by filing false charges against the plaintiff due to the unconstitutional search conducted by Sgt. Simon and is the reason why Sgt. Simon, who had at least 12 other uninterested/unbiased Judges to seek a search warrant from but Sgt. Simon specifically sought Judge Steinberg because they both were being sued by the Plaintiff in Cases 85-0097, 89-00223 and 89-01870 this gave them the opportunity to get even with the plaintiff and Judge Steinberg was required to recuse himself *Sua Sponte, State v Utsch, 184 N.J.Super. 575, 581, N.S. App. Court and N.J.S.A. 2A:15-49(e)* but failed and refused to do that for the Appearances of Justice as per the case Law. He did Obstruct Justice Contrary to N.J.S.A. 2C:29-2 and commit Official Misconduct contrary to N.J.S.A. 2C:30-2 & made a False Record. N.J.S.A. 2C:21-4 & 2C:28-7.

15

10. Should the court find that the **defendant Judges** are **immune** for all **relief** the **plaintiff** seeks have their Liability placed upon the shoulders of the other defendants under the theory of **Joint Tort Feasors** or jointly or severally.

11. All **defendants** are being **sued** in their **official** and **private capacity** for Their part in the vast conspiracy for which is not a function of any of the defend-ants. That this case is reminiscent of **Congress' purpose** of **creating** 42 U.S.C. 1983 as **explained** by the U.S. Supreme Court in the case of *Mitchum v Foster,* 407 U.S. 225, 241, 1972 and *Pierson v Ray, 386 U.S. 547, 561-567 [Last Ft.Nt. On 567.] (1967).*

12. The defendants are being sued to seek relief due to the violation of my rights that they have committed and because there is the right in the state to seek relief from his conviction all the way back to 1992 the plaintiff seeks an independ-ent and separate review of the issues this plaintiff has raised for the 1st time in his 2012 PCR Motion that the merits of said motion were never addressed by the **State Courts, they** dismissed the PCR as being **untimely** and in fact Violated **Due Process.** See case in statement #7 above.

13. The State has failed to prove or provide proof the **Plaintiff** was apprised of the Changes in the Rules of court that in fact gave the plaintiff direct knowledge of said changes and as such the plaintiff has the right to have the issues raised in the 2012 PCR and the new issues of **Due Process, Probable cause hearings** and the **indictment process** that was never before any State Court and which the plaintiff was denied of his right to be heard on these issues.

16

14. The conduct of the defendants has subjected this pro se plaintiff to the arbitrary distribution of unrestrained justice. That is subjecting the individual to the arbitrary exercise of the powers of government unrestrained by the established principles of private right and distributive justice. *Leeper Supra. Facts and issues from June 1990 to December 1992.*

15. That the Judges of the **Camden County Superior Court** did direct the county clerks, who did direct the docketing and filing clerks, not to docket and file any matter submitted by **Mr. Reardon** to deny him of access to the courts in accordance with the 1st, **Art. VI** and **Amendment 14 rights** under the U.S. Constitution and in fact did refuse to docket and file the following items:

A. Civil suit for declaratory relief;

B. A Habeas Corpus petition;

C. To file and prosecute counter criminal charges against the police, prosecutors and judges; and

D. To file and be heard on 6 motions.

16. Prior to these criminal charges the plaintiff had sued the judges who sat on the bail hearings, the judges who granted the search warrants and had suits pending against the **Runnemede Police** and several of the persons involved with the search and plaintiff's charges and arrest and trial and conviction.

17. That **Defendants Farmer and Walshe** did agree to go along with the

17

bogas and fraudulent charges and to injure the plaintiff in his person, property and rights as follows:

A. To not see the plaintiff while in jail and not keep him informed of the proceedings or to do no investigatory work. Both **Farmer** and **Walshe.**

B. **Mr. Farmer** did agree to not appeal the bail set by the court which he agreed was excessive or failed to inform **Mr. Reardon** of the need to appeal the Bail set.

C. That **Mr. Farmer** did agree to not take issue with the **Constitutional Rights** of this plaintiff as admitted by the head of the **Public Defender's Office, Mr. Friedman,** And thus allowed the plaintiff to be indicted.

D. That the **Public Defender's** did fail to assert plaintiff's **speedy trial rights** & his **probable cause rights** in accordance with *Gerhstein v Pugh, 420 U.S. 1027* or his **right** to reasonable bail. 18 U.S.C. § 3161.

E. That **Mr. Walshe** did agree to go along with the conspiracy to injure the plaintiff in his **person by agreeing** to fail to take issue with the rights mentioned in **D.** above, to refuse to inform the plaintiff of the types of questions to be asked of the witnesses and to refuse to issue the subpoena's for plaintiff's witnesses when he agreed to so do and thus forced this pro se person to testify himself. Denial of the 5th.

F. That **Mr. Walshe** did fail to put the state's case to the test regarding the illegal search and seizure matters by allowing **Judge Greene** to simply find probable cause when no such proof was proffered by the state as the state failed to

18

provide any facts as to (1) What **crime** the **plaintiff was committing** or about to **commit** in his **apartment** when he was **150 yards away** and **attempting to commit suicide**; (2) What were the **criminal implements** the police were going to search for in plaintiff's apartment; (3) what was their belief that said implements would be in the plaintiff's apartment; (4) what was the **exigent circumstances** that required them to act instead of seeking a **search warrant 1**ˢᵗ; (5) Given that the **Police** and **Judge Steinberg** were being sued by the plaintiff in the same **2 cases**, and given there were probably other judges the police could have gone to, and given they specifically sought out **Judge Steinberg who approved the warrant without any**

**basis for probable cause or exigency**, why the warrant should be upheld and (6) What was the basis for their belief that if an immediate Warrant-less search was done that evidence would or could be lost or destroyed if such a search was not done.

G. The police **took** pictures of the alleged bomb which showed that it was not in fact armed and **Mr. Walshe** never pointed that out to the state in the **probable cause hearing** of the **warrant** or at **bail hearings**.

H. Numerous attempts were made to both **Farmer** and **Walshe** to take issue with the violations of **Mr. Reardon's rights** and neither of them would seek to assert or protect those right or tell **Mr. Reardon** the reason(s) why they would not and refused to present **Mr. Reardon's motions** to the court that he was seeking to be heard on. They failed to comply with **Mr. Reardon's Rights, Issues and Demands**.

18. **Mr. Reardon** did make it clear to the court that **Mr. Reardon** was **denied**

19

Due Process to a fair and impartial hearing and tribunal due to the Lawsuits pend

-ing against Judges Greene and Steinberg. [appearance of justice.] See *US v.*

*Kennedy, 682 F. 3d 244, 253, 257-258, - Court of Appeals, 3rd Circuit 2012 and* In

re Advisory*Letter No. 7-11, 61 A. 3d 136, 137-144, - NJ: Supreme Court 2013.*

19. On or about May 15, 1990 I began counseling with Mr. Keating in

Haddonfield, N.J. because I was suicidal and was trying to ascertain why man

clings to life so desperately.

20. I stopped seeing Mr. Keating around the end of May or beginning of June

after being unable to obtain satisfaction with regard to my questions.

21. At about the same time I also stopped going to work at the U.S. Postal

Service in Bellmawr, N.J.

22. On or about June 19, 1990 I did purchase 2 one pound cans of black

powder, Lawfully, from Ed Tarpy's Sporting Goods Store.

23. The sole purpose of the purchase of this powder was to commit suicide

with and after seeing, hearing and remembering about CO poisoning on 6/20/90,

I abandoned the black powder for CO asphyxiation. Plaintiff was severely depres-

ed over what the courts did to him and his children in his divorce proceedings.

24. The Ambulance Crew obviously went along with the request of the Police

to not treat Mr. Reardon with Pure Oxygen to give them time to warrant-lessly

20

search **Mr. Reardon's Apartmen**t to give them time to do so as the Crew never in fact treated **Mr. Reardon** with Pure Oxygen.

25. The plaintiff was not treated at the hospital for **CO poisoning** and as a result, the **plaintiff was** forced to recover naturally over the next **15 hours. As such,** the police had more than ample time, knowing through the hospital or ambulance crew, who are trained to handle said matter and would know such information and was done so, apparently, at the behest of the Ambulance Crew and Police, to proceed to **Mr. Steinberg's house prior to the search**, obtain a search warrant and still return to search the house prior to the **Plaintiff's** release from the hospital. They failed to prove any evidence was or could have been lost or destroyed or failed to show why they could not have placed a guard outside the door while they **1ˢᵗ** obtained a **search warrant**.

26. Had the **plaintiff** been **treated** by **pure oxygen,** he would have recovered in **roughly 3.3 hours or around 3 hours and 18 Minutes, and around 6:20 a.m.** which might not have been sufficient time for the police to search the **plaintiff's apartment warrant-lessly** and do so and even leave before the plaintiff was returned and thus uncover their fraudulent and illegal activity. (i.e. **that they** had already finished and left plaintiff's apartment before the warrant was ever obtained, this Is probably why the **warrant** was **granted** by Steinberg, because once he discovered what they had already done he acted to protect them and cover it up and also explains why he failed to comply with the mandates of Law.)

27. The Runnemede Police Department knew of this purchase, knew of the alleged attempted suicide in May 1990 and yet despite N.J.S.A. 2C:58-7(a) they admitted to the newspapers of knowing of the purchase and there was nothing to lead them to believe anything illegal was being committed and had no reasons to search the plaintiff's apartment or seek a search warrant under suspicion of N.J.S.A.2C:39-4 violations.

28. On the afternoon of 6/20/90 the plaintiff did purchase 2 bottles of over the counter sleeping pills from Rite Aid Pharmacy of which he took about 11 P.M.

29. At about 11 p.m. on 6/20 the plaintiff left his apartment and went to Ruof and sons parking lot, about 150 yards away and set his car up to asphyxiate himself by taking all 60 sleeping pills.

30. At about 2:30 a.m. the Runnemede Police found the plaintiff, Mr. Mondelli, trying to take his life and approaching the car because he smelled the heavy odor of exhaust fumes around the car and found the plaintiff unconscious in the back of his vehicle.

31. Mr. Mondelli reported this and at least 2 other officers and the Runneede Ambulance crew arrived at the scene, Sgt. Simon and Officer Leason.

32. At approximately 2:40 a.m. I was somehow awoken, regained consciousness, and discovered the police banging on the window and yelling at the plaintiff inquiring what he was doing.

33. The Police then forcefully removed the plaintiff from his car, strapped him to a stretcher and removed him some 5-7 miles from the vicinity from where

22

he was found and had him involuntarily committed/admitted to **Our Lady of Lourdes Hospital, psychiatric unit,** all without the plaintiff's consent or authority.

34. At no time did the **Police or Ambulance crew** ask the plaintiff if he wished to go to a hospital or to go home, or for that matter, what hospital, if he so chose, or if he wanted to go or not.

35. At no time did the **Police inform the plaintiff** they had an intent to go back to the plaintiff's apartment and search it.

36. After the Police had the plaintiff removed from the scene and area and out of the way, they then went to the **plaintiff's apartment** and **broke** and **entered** said apartment for the purpose to search for, and seize, the black powder they knew the plaintiff legally had in his possession and in known contradiction to the law and their duty to it. In this search, they did **warrant-lessly** and **exploratorily search** the plaintiff's apartment and seized numerous items of monetary value while armed, and under guise of authority to so do.

37. In the affidavit for a **subsequent search warrant, the defendants** failed to identify at any time the alleged items of criminal activity, the criminal activity believed to be being engaged in, the belief for either of these or the basis upon which they believed that the items sought to be searched for and seized were illegal or would be expected to be found in the home of the plaintiff.

38. In fact, the defendant **Sgt. Simon** not only **committed perjury** and numerous criminal code violations in the application of the search warrant and

23

affidavit, but he committed perjury at a suppression hearing and in front of the grand jury and at trial. Under the Constitutional rights of the people of New Jersey, the people have the right to obtain from the perjurer the same thing from them that they sought to do to the plaintiff, and that is jail, criminal prosecution and compensation in the way of impossible fines and other monies.

39. According to the necessary elements for a search warrant for a home, the 2 elements required are to show they will expect to find implements of criminal activity in the possession of the plaintiff and what those implements are and that they expect to find them in the place to be searched. Frauds have occurred here in that the police stated that the purpose to search the house was to locate the 2 cans of black powder which the plaintiff lawfully possessed. If they are lawful to poss-es, then there is no element or identification of the criminal implements that the police believed or went to search for in the possession of the plaintiff. If, however, we assume that the powder was unlawful under 2C:39-4, then they could be imple-ments of criminal activity, but if there was an intent to use them, the police failed to then identify the basis for the belief they would still be in the possession of the plaintiff and therefore would be in his apartment. In Fact, at trial and at no other time, the police finally admitted the sole basis for the search was out of "fear" which is not probable cause. There is nothing in the affidavit to lead the police to the belief that Mr. Reardon was in possession of any criminal implement, and if they were intended to be used against the person or property of another and that the plaintiff

24

was in the midst of trying to kill himself how the police believed the criminal imple-ments were for that unlawful purpose I cannot intend to use it if I believe I will be dead. N.J.S.A. 2 C:57-7(a) and (c).

40. Though the plaintiff was knowingly suffering from CO poisoning and his skin was bright cherry red, the Ambulance crew failed to treat the plaintiff in a proper medical fashion as is commonly known. That fashion is to treat the person with pure oxygen, which wasn't done, they did assault the plaintiff.

41. The Hospital Staff of O.L.O.L.H. also failed to render proper medical attention to the plaintiff for CO Poisoning or for Dyphenhydromine Hydrochloride overdosing which can cause bladder Damage. As a result of this failure to properly treat Mr. Reardon Medically I wake up every 2-3 Hours to go to the Bathroom which I did not do before this.

42. The Police cannot, nor can the ambulance or hospital, be said to have acted in a proper fashion regarding the plaintiff because the plaintiff was not suffer-ing from CO poisoning, there was no knowledge of attempted suicide and no need to call the ambulance and send him to a hospital and the removal was a part of the covert or overt plan to injure the plaintiff as has been occasioned due to the past lawsuits against these people, and if the plaintiff was truly suffering from CO poisoning, which would be consistent with a need for some sort of action, then the inactions on the part of the ambulance crew and hospital are clear as to their results. These people aided and abetted the activity of the police by agreeing to take

25

the plaintiff away from the area, not treating him properly to properly recover and

by the hospital staff confiscating his clothes so that the police could do as they did.

In so doing, they have actively participated in criminal activity and the actions that

took place by the police.

43. At the scene of the search, the defendant police took numerous pictures of

the search which clearly indicated that there was no live bomb and there was no

exigent circumstances existing. This was not admitted to till Oct. 1991.

44. At Judge Steinberg's the defendants Simon and Leason did submit a

false documents and false testimony to be relied on in this proceeding, and despite

the Judge having no discretion to choose to transcribe or summarize these proceed-

ings and then file said same, the judge failed to comply with the mandates and

duty to and under the laws of the United States and/or state of New Jersey. see

M.P. v S.P., 169 N.J. Super. 434-435 and 441-443. This law was never observed or

abided by Judge Steinberg and I have never raised issue with this law prior to now.

45. The problem with the search and the above is that an eye witness admitt-

ed in court that the police left the plaintiff's apartment around 6:30 a.m. and even

if the warrant was obtained at 7:30 a.m., the search continued without a  valid

warrant to rely on.

46. On 6/21/90 Captain Pfieffer, did state to the Courier Post newspaper

that the police knew Mr. Reardon purchased the Black Powder, that they knew of

no reason for Mr. Reardon so purchasing the powder since he did not have any kind

of weapons for such and they knew he was doing nothing wrong.

47. The Police did in fact do a complete and thorough warrant-less search of plaintiff's apartment from around 2:45 a.m. to about 6:45 to 7 a.m. prior to seeking the search warrant.

48. That it was only then that the police discovered the makings of a bomb and there was no supporting facts in the affidavit that the police identified as giving them reason to believe there was a bomb in plaintiff's apartment.

49. That between 7 and 7:15 am the police did approach Judge Steinberg at home to get him to sign the post search affidavit for the illegal search that they had just done. The Judge did state the police arrived at his house between 7:15 and 7:30 am and that he called a Federal Judge then regarding the search warrant and claim -ed that the judge was in early that day to charge a jury when the Federal Court does not even open till 9 am. [How did Judge Steinberg know the Judge would be in court at that time?]

50. That this 6/21/90 search warrant lacked any time as to the application for such on the warrant like that of the 6/29/90 warrant.

51. That the affidavit of Sgt. Simon of the Runnemede Police department was based on the results of the warrant-less search to obtain the Post Search Warr-ant and failed to identify any facts that lead them to believe Mr. Reardon was in possession of the alleged bomb and that it was in fact in Plaintiff's apartment or that he was or was about to engage in some criminal activity and what activity that

27

was and what was the basis for **exigency** since the plaintiff was not in any position to destroy any evidence.

52. At the **hearing** on the **6/20/90 Search warrant** of **Sgt. Simon, Defendant Rossetti** did **suborn perjury** from **Defendant Simon** by **Sgt. Simon's** failure to provide proof of **Probable Cause and exigent circumstances.** This **hearing** was before the **Defendant Greene** who had a covert meeting of the minds with the **defendants Simon and Rossetti** in order for this **judge to vent his spleen** and get even with the **Plaintiff** for having suits pending against **Judge Greene.** That the **Defendant Simon** did commit **perjury** contrary to **N.J.S.A. 2C:28-1 and 2C:28-2** by claiming they were looking for an **explosive device** when they had no such basis for such a claim, and defendant **Rossetti** did commit **Subornation of Perjury,** and by Simon's silence as to the basis for **exigent Circumstances for Warrant-less Search** of the plaintiff's **apartment** and thus made a false record contrary to **N.J.S.A. 2C:21-4 and 2C:28-7,** did **Obstruct Justice** contrary **N.J.S.A. 2C:29-2** and did **Commit Official Misconduct** contrary to **N.J.S.A. 2C:30-2.** This testimony was also defective and in Violation of the **Plaintiff's right** to a **fair and impartial hearing** in that the **6/20/90 Search Warrant** application **was not transcribed** as per *M.P. v S.P. Supra* making such testimony suspect of Bias and being false and the **Plaintiff** has never taken issue with this in any court prior to now.

53. On the morning of **6/21/90** the plaintiff was in fact arrested and the subsequent search of the plaintiff's apartment was to an area not within the immediate vicinity of the apartment.

54. **In August 1990** the plaintiff made a legal request for this information

and no such information was ever provided because no such information exists.

55. The defendants just spoken of have all been sued in the past by the Plaintiff in **Federal Court and the Police knew Judge Steinberg has also been sued** by the plaintiff and that any judge may issue a warrant, including the municipal judge, but they specifically chose **Judge Steinberg** who failed to carry out his duty to the law to transcribe the search warrant application and to recuse himself on his own motion due to having been sued by **Mr. Reardon**, being presented with an affi-davit that supplied no factual basis that lead the police to believe **Mr. Reardon** was in **possession** of any **criminal implements** and had **no exigency** stated in the **affidav** -it, **especially** when the police knew the same things on **6/19** and **6/20** that they knew on **6/21** but chose not to seek a search warrant.

56. Prosecutor **Andrew Rossettti, Judge Rossetti's son**, for whom the **Plain-tiff's ex-wife worked for as his Court Clerk for about 6 or more years** and for whom the plaintiff is **disliked by his ex-wife and the Judges of Camden County** for his past activity in the courts and for which his **ex-wife** had a very good working rela-tionship with **Judge Rossetti**, did on **6/20/90 and 10/26/90** submit papers to the court for which he failed to investigate as true and provide a foundation as to their support claimed that "Several live bombs" were found in the plaintiff's apartment and all this in known contradiction to the truth that at most one was found.

57. **In the prosecutor** failing to do a proper investigation, as did **Miss Caplan upon entering the case, the prosecutor would have immediately discovered, if he** didn't already know of their existence, the photos taken by the police which would have proven that no live bomb was found. As a result of this failure to investigate and examine the evidence, the **plaintiff** was injured by his continued incarceration by the loss of and destruction of evidence and his job due to the **$100,000.00 exces-**

29

sive **bail** set upon this **1**<sup>st</sup> time offender for victimless crimes. At no time were any
steps taken to correct this falsehood.

58. As a result of the plaintiff's arrest and information provided by the police
to the papers, the **plaintiff's reputation and character was slandered** and libeled
causing the plaintiff's injury by causing him to be evicted from his apartment which
resulted in the loss and destruction of evidence vital to his defense, not only for this
criminal matter he was in jail on but for the defense of civil actions then pending
against the **Runnemede Police and Judge Steinberg.**

59. Despite the law on search warrants and the knowledge of the **Judge** and
his duty to the law, the defendants issued and obtained illegal search warrants
which allowed for no notice, no service and allowed the police to decide what was or
was not evidence.

60. The plaintiff was never actually served with this **6/21/90 warrant.**

61. According to an eyewitness, the **Police** finished their search of the
plaintiff's Apartment prior to the return of **Sgt. Simon** with the **warrant.** This
would account for the warrant not having been left at the house when it was
supposed to have been done.

62. On **6/22/90** the plaintiff was taken to **Camden County Jail** under arrest
on **$100,000.00** full **cash bail** and was interviewed first by **Miss Gallegher of the
Social Worker's office,** and in the middle of this interview the plaintiff was taken
down stairs to the internal affairs office where he was introduced to someone who
identified himself as **D.Sgt. Bruce Dawson of the State Police Bomb squad.** At trial
**Mr. Dawson** denied ever having been to the county jail, meeting the plaintiff or
interviewing him. I made requests for the visitor Logs for interviews and was never
provided said records to show **D. Sgt. Dawson** could not be believed.

63. On 6/28/90 the plaintiff's father was at the plaintiff's apartment and did not find the warrant mentioned in #33. However, **on the morning of 6/29/90**, when the plaintiff's father returned to the apartment, the warrant and inventory were now present. [This was for the 6/21/90 search.]

64. On 6/29/90 D. **Sgt. Dawson** of the state police did also apply for a **search Warrant** in front of **Judge Steinberg**, where upon **Mr. Steinberg**, this time in his chambers as opposed to his home, again failed to transcribe the proceedings as he is required and mandated to do under and upon motion this warrant discovered that there were 3 **warrants in existence for this date**. One left at the apartment which indicated it was signed by a **Superior Court Judge at 9 p.m.** On the Date in question, one which **Sgt. Dawson kept** which shows it was signed at **3:15 p.m.** on the date in question by a **Camden County Judge** and the one on file which was blank.

65. The search for this occasion took place at about 5-6 p.m.

66. In violation of the law and their duty to it and their lack of discretion under it. **Mr. Geene, Mr. Rossetti, Mr. Walshe** and others allowed Sgt. Simon to testify to material and evidence that was not permissible to be testified or admitted in court, and to allow **Mr. Steinberg and Mr. Dawson** to reconstruct a record of the later warrant application and provide material legally impermissible to be entered, admitted or relied on in the court. As a result, **Mr. Greene** did rely upon this additional and illegal material and ruled against the plaintiff to **deliberately, intentionally and knowingly** cause him injury on the following matters, These matters are: See M.P. v S.P. Supra.

A. 6/30/90 motion to dismiss;

B. 7/6/90 Order to show cause;

C. 7/26/90 Motion to dismiss;

31

D. Aug. 1990 Motion for discovery

E. Oct. 31, 1990 motion to suppress, dismiss and other relief. 14 issues raised;

F. Oct. 31, 1990 Habeas Corpus to the state Court, raising same issues in E;

G. Nov. 1990 motion for discovery;

H. Feb. 1991 motion of reconsideration and supplement the court's order confirming the 6/21/90 search warrant.

I. May 1991 attempt to file a declaratory judgment act complaint;

J. Petition of Certiorari to the State Supreme Court;

K. July 1991 motion to dismiss. 8 issues raised, Court denied even though it was an unopposed motion.

L. Aug. 1991 motion;

M. Oct. 1991 motion;

N. Nov. 1991 Motion

Despite Rule 3:10-6 of the New Jersey Rules of Court, Despite the State Supreme Court decision in State v Lund, 119 N.J. 35, 52 and the U.S. Supreme Court Decision in Lawrence v State Tax Commission, 286 U.S. 276, 282, which confirms the principle in the New Jersey Rules of Court cited above, the court and other defendants failed to ensure that all the above matters were answered, answered correctly or answered with specificity, in contradiction to the law, U.S. Constitutional Amendment 6, N.J. Constitutional Art. 7, Sec. 1-1, N.J.S.A. 41:1-1, -2 and -3 and Jersey City v Hague, 18 N.J. 584, 590, and their duty to it and the Plaintiff.

67. On 7/1/90 the plaintiff learned that a friend at work no longer wanted anything to do with the plaintiff because he was told by a Philadelphia Cop that

the State was out to get me and he should stay away from me.

68. Later, the plaintiff received a letter from a friend at work who told me no-one at work wanted anything to do with me anymore and they were afraid to get involved.

69. On 7/3/90 the plaintiff was arraigned in the contradiction to the due *process rights under Gersten v Pugh Supra* and N.J.S.A. 2A:18-10 and on this same day the plaintiff's father served upon the public defender's office a set of pap-ers to be proceeded on by motion, which was never done by them.

70. On 7/24/90 I did see the public defender, **Mr. Farmer,** for the 1st time and he agreed there were valid search issues and he would present a motion to suppress but he never did. He instead allowed the plaintiff to be indicted.

71. The **Public Defender's** allowed the plaintiff to be indicted and prosecuted on less then the necessary proof required under the **State Constitutional bill of rights.** (i.e. there must be the sworn affidavit from at least 2 **honest and reputable witnesses** who admit the plaintiff has done what he allegedly did. The only testi-mony before the grand jury was that of **Sgt. Simon.** This being contrary to **United States** v. **Cruickshank, 92 US 542, 561, 1876:)** See **1676 Concessions and Agree-ments of West, New Jersey, CHAP. XX; Blackstone's Commentaries, Book 1,Chapt -er 1, Page 124 and Book 4, Chapter 27, Page 351-352; Deuteronomy 19, Versus 5-16; Mathews 18, Versus 15-16, Magna Carta of 1215 Article 38 and Magna Carta of 1297, Art. 28.**

72. During the 6/29/90 search of the plaintiff's apartment by the **Sheriff's** office, the State Police, the Department of Alcohol, Tobacco and Firearms and the

33

U.S. Postal Service, the defendants went through the apartment and literally ransacked it As a result of this conduct, vital evidence to the Plaintiff's case was lost, stolen or destroyed.

73. In Aug. 1990 the plaintiff did receive a packet of discovery material and nowhere in this material was there any proof as to the 2nd degree charges or basis thereof, copies of the transcripts or summary of the 6/21 and 6/29 1990 search warrant applications, or mention of the photo's taken by the Runnemede Police. As result of these fraudulent acts of omission or commission, the plaintiff was denied relief under the search and seizure issues and led to other acts of fraud later in the trial. These acts led to the direct and indirect injury and interest of money by the State and Defendants in that the plaintiff was suffered to the loss of his job with the U.S. Postal Service, was continued to be held to $100,000.00 full cash bail, found guilty and ordered to pay $30.00 to the VCCB, not to mention the monetary interest derived by the defendants of Runnemede who escaped monetary damages in a lawsuit that was then pending against them in Federal Court for damages and violations of rights that they avoided being prosecuted on these charges and the resultant loss and destruction of evidence and inability to defend those matters due to the plaintiff's incarceration. (i.e. the damages sought in those matters were in the Millions of dollars.)

74. On 8/23/90 Mr. Farmer was notified of the right to apply for PTI in the plaintiff's behalf and he never so applied nor told why he could not so do or would not so do.

34

75. In Sept. 1990 the plaintiff made an effort to obtain all material in the prosecution file or which might be used by them or beneficial to the plaintiff and nothing more was ever provided to the plaintiff till July 1991, and after the 1st set return date for trial which was later postponed. Inadequate notice.

76. On Sept. 20, 1990 I made an effort to obtain extrinsic evidence from the clerk's office with no success.

77. In Sept. 1990 Mr. Farmer presented a bail motion to reduce the plaintiff's bail, and asked, along with the prosecutor and the court without my knowledge or consent, to have the plaintiff evaluated by the jail psychologist. In his arguments of this motion, he admitted that to hold a person for such high bail because one is suicidal is unconscionable. The prosecution countered by claiming the plaintiff was a threat to society because he had several live bombs and the mak-ings for others knowing all along that this was a lie and did present such papers to the court for consideration anyway. Despite the law that requires that a defendant be present at all critical stages of proceedings, that bail is such a stage, that bail is one of those issues which must be appealed immediately or lost, and that the prosecutor and judge may not legally deny or deprive any defendant of any constitutional rights knowingly, but did so do anyway, despite the fact that the judge could order the plaintiff to be brought to the court and failed to so do, and despite the public defender's fiduciary relationship which prevents him from denying his client of any rights or causing him injury, the defendant's recklessly, wantonly, callous, intentional or deliberate indifference did ignore the plaintiff's rights and their duty to

35

him and under the laws and did deny the rights mentioned.

78. As a result of the incompetence and inadequate manner of being represented and defended the plaintiff attempted to file an ethics complaint and was denied the right to do so.

79.  The plaintiff's 8th Amendment rights were violated on at least 5 occassions when he asserted and exercised his 5th Amendment Rights. These occurred on the 21st of June 1990 when he was in O.L. of L.H. and he refused to submit to a psychological examination, as a result, the plaintiff was arrested and placed in the psychiatric ward of the County Jail. The 2nd occurred after 2 days in the ward/wing when he was again sought to be evaluated and he refused and he was placed on the wing with sexual offender's where all other inmates could infer and imply and presume this to be his charges, where they could then  ridicule and mock him while going through the chow line. The 3rd  time occurred in Sept. 1990 at the bail hearing and he refused to cooperate and as a result his bail was refused to be lowered and he was now placed in general population after having this sexual offender's stigma attached to him causing him to fear for his safety and welfare. The 4th Occurred when he plaintiff sought to plead insanity at common law and apparently the prosecutor had the plaintiff moved back to the mental wing of the jail for 'observatory evaluation" especially when the plaintiff's was not under the state's insanity /diminished capacity statutes but was by way of the common law and N.J.S.A. 2C:2 -5, general defenses statute, which did not apply or require such evaluations or proofs. The 5th occurred at trial when the court refused to allow the plaintiff to

36

plead diminished capacity or insanity based upon the proofs submitted and relied upon by the state to obtain $100,000.00 full cash bail against the plaintiff. (i.e. that he was extremely unstable, or of unsound mind and a danger to himself and others he suffered under a mental defect. As so stated by Mr. Rossetti.)

80. In Oct. 1990 the plaintiff received a notice that the court had scheduled a probable cause hear for Nov. 2, 1990 and October 31, 1990 the plaintiff did cause to be submitted to the court a 100 page handwritten brief, containing 14 issues and documents with 450 or more pages of exhibits, this brief would have reduced to 43 typed, double spaced, pages of 8 ½ X 11 typing paper, or about 3 pages per issue with the facts included. Without prior knowledge or reason why, the court postponed his matter without date.

81. In Nov. 1990 the plaintiff obtained a petition signed by numerous inmates that based upon the law and fact of the plaintiff's case, there was no probable cause for the 6/21/90 search.

82. Theses papers did include a motion to dismiss for undue delay, i.e. speedy trial, they were submitted to Judge Porecca, the then assignment Judge, in accordance with N.J. Rules 3:25-3 and 3:26-1. No order was ever entered by Judge Porecca transferring the matter to Judge Greene and Judge Greene did intercept, seize and hear such matter in contradiction to his rights and without discretion to do so. This is a violation of a Ministerial Act/Function he can be held liable for.

83. In Oct. 1990 the plaintiff saw Mr. Farmer and Mr. Walshe in which Mr. Farmer stated the reason he waited to proceed on the suppression issue was he

37

wanted to get a good Judge and he didn't want to take it in front of just any Judge. Since **Judge Greene** is a more liberal Judge on such issues, I will file the motion now. The problem with this statement is that either **Mr. Farmer** knew he was going to get **Judge Greene** ahead of time and thus there was a **covert conspiratorial/complicitorial conduct/action involved,** because he could have drawn any **judge,** one, which might not have been as liberal as **Judge Greene,** but instead more state oriented, in which case there would be no reason to delay the hearing to begin with. Just take your chances, just as you take your chances with the luck of the draw for a trial judge. Obviously, if he deliberately waited, this would imply he knew ahead of time who would be the **trial judge.** But if he did not know who the trial judge was going to be, there obviously would be no concerted efforts or reason to delay as one takes ones chances in front of any judge for suppression as would one in drawing a trial judge.

84. In Nov. 1990 the plaintiff filed matters in the **Federal District Court and invited the Public Defender's Office** to assist me as per N.J.S.A. 2A:158A-5 and **they refused to provide that assistance and the court failed to order it, as a result the plaintiff** was forced to proceed pro se and the matters were dismissed for various reasons.

85. On 2 occasions in Nov. 1990 the plaintiff did submit follow up letters to **Judge Porreca** regarding his Oct. 31, 1990 **papers.**

86. In **July 1991** the plaintiff learned of the possible true reason for the delay from a fellow inmate named **Fred Ritchie** who spoke with **Mr. Friedman, 1ˢᵗ Assis-**

38

tant Public Defender of Camden County and the boss of Mr. Farmer, who told Mr. Ritchie that they do not take issue with or raise constitutional matters prior to the defendant being indicted. (In other words, the criminal defendant in Camden County may be held in jail for an indefinite period of time without being indicted, without being able to request speedy trial, without being able to assert or protect his other rights and in violation of the law.)

87. On 7/14/91, without prior notice of the reasons why, the plaintiff was called to court to discover that it was for the suppression motion filed in Oct. 1990 and for which none of the issues raised by the defendant, there, the plaintiff here, or exhibits submitted in support thereof were raised, heard or decided. Nor were they used or relied upon by Mr. Walshe. At this hearing Mr. Walshe, and Judge Greene, in known contradiction to their authority and without any discretion to do so, allowed the defendant Simon and the prosecutor to testify and solicit testimony not raised, provided or submitted to Judge Steinberg on 6/21/90. Mr. Walshe also failed to raise issue with the Officer's credibility and statements as to the fact whether there was in fact an arrest within the meaning and intent of search and seizure issues, see *U.S. v Mendenhall, 100 S.Ct. 1870,* he failed to elicit what the criminal implements were the police believed the plaintiff was in possession of, he failed to elicit if the belief was based upon intent to use, What made the Police believe the items would be in the plaintiff's home, he failed to elicit what the basis for the belief of criminal activity and possession of criminal implements was, he failed to require the state to provide proof that any other reasonable person would have

39

searched the plaintiff's apartment under the circumstances here, and he failed to raise issue with the exclusionary rule as established in U.S. v Russel, 93 S.Ct. 1637 , 1648 which found that the exclusionary rule was adopted to exclude evidence seiz- ed by police in violation of state procedural process and the fact that under N.J.S.A. 2C:58-7(c) states that the police were required to obtain a search warrant before searching which is consistent with the findings of the court as enunciated in State v Novembrino, 105 N.J. 95 which held that in New Jersey a search of a private dwell- ing may not occur without a search warrant, and finally put the court to the test by failing to draw the court's attention to the decision of St. v Lund, 119 N.J. 35, 52 and the case of State v Hartley, cited at this page in Lund, which stated that the court has a duty to answer the State Constitutional issues and grounds at the same time it is addressing any case involving Federal Issues.

88. Shortly after this hearing the plaintiff filed a motion for reconsideration, to supplement the record and to proceed pro se.

89. On 7/15/91 the plaintiff was again taken to court without prior knowledge or the reasons why and heard on his application to proceed pro se that was suppos- ed to be heard back in April of 1991, but never addressed the plaintiff's issues to reopen, supplement and reconsider the court's prior decision in February on 6/21/90 search.

90. At the 7/15/91 matter, Mr. Rossetti suggested to the court that the plain- tiff be given the right to be heard on any and all issues he wished to raise and the Judge so ordered this and further ordered that Mr. Rossetti would have to respond

within 2 weeks of the receipt of the plaintiff's papers. Mr. Rossetti agreed but never replied to the plaintiff's papers and the motion/issues were unopposed matters. When they were returned to court the following month, the plaintiff immediately moved for summary judgment in his favor due to the prior court order and the failure of the defendant, Rossetti, to respond as ordered and who suggested such matters should be permitted and in known contradiction to the rules of court, R 1:6-2 and 3:1-4(c) in violation of due process thereto. The court asked Mr. Rossetti his reply and he stated simply he is not under obligation of the rules to answer, which he is not but is aware of the results and consequences of his failure to do, and that because there were so many motions by the plaintiff he did not know which ones to respond to and this being knowingly contrary to his own prior statements of purpose for the motions. The court permitted Mr. Rossetti to respond despite these objections and that it prejudiced the plaintiff's right to a fair and impartial hearing and to lack of adequate notice of the state's position in advance so as to prepare a defense against them. See Crane v Ky., 106 S.Ct. 2142, 2146-2147, and did deny all relief to the plaintiff or refuse to answer some of the issues. The issues raised were: [if Mr. Rossetti did not know which motions to respond to how could he so object without such knowledge. He was permitted to put Mr. Reardon's 1st and 5th Amendment Rights to meaningfully being heard, to a fair hearing and to the Equal Protections of the Law.

    A. Right to a jury of my peers;
    B. Right to die and relationship this plays or would have with respect to or on the issue of jurisdiction;
    C. Whether I have the right to have answers to my questions and if

rights were previously denied;

D. To have one trial for all matters, criminal or civil in dispute between myself and the police, etc. either direct or indirect.

E. To have a jury which determines as to the law, fact, and verdict and renders its judgment;

F. To due process to a fair hearing;

G. To due process to a complete defense. And

H. The right not to be placed in conflict between the exercise of state and state, state and Federal or Federal and Federal rights.

See *In re Gault, 387 U.S. 1, 19, 23, 25, 29 and H.E.S. v J.C.S., 175 N.J. 309, 2003.*

91. In July 1991 the plaintiff sent an **11 page letter to Mr. Friedman** complaining of the inadequate quality or representation provided by the P. D.'s office and later to **Mr. Smith in Trenton**, and no response was ever received from either person and the plaintiff felt he had no choice but to proceed to trial as a pro se person.

92. In October 1991, **Judge Steinberg** did in fact commit perjury contrary to N.J.S.A. 2C:28-1 and 2C:28-2 by coming into court and testifying as to his belief as to the facts of the 6/29/90 **Search Warrant application of Sgt. Dawson** and he did have a covert meeting of the minds with **Sgt. Dawson and Judge Greene and Prosecutor Caplan** to cover up his foul up of the 6/29/90 **Search warrant** in that in 20 **years** of his approving **Search Warrants**, and which amounted to his so approving over **15,000 such warrants**, that he expected the appearances of justice would be satisfied by his claim that he made a mere error in his **routine and procedures**, and in this case where the **Plaintiff** had lawsuits pending against this **Judge by this Plaintiff**. He did also make a **False Record** contrary to N.J.S.A. 2C:21-4 and 2C:28-

42

7, did obstruct Justice contrary to N.J.S.A. 2C:29-2 and did commit Official Mis-
conduct contrary to N.J.S.A. 2C:30-2. He was denied the right to testify as to what
he believed happened on the 6/29/90 Search Warrant in that the law of this state,
*M.P. v S.P. 169 N.J.Super. @ 434-435 & 441-443, 1979, Appellate Division,and R
1:3-2,* Which required Judge Steinberg to record the Search Warrant application to
avoid such appearances of Bias, and he failed to do that. His conduct is relevant to
both the issues of conspiracy, intentional denial of rights and to vent his spleen.

93. In Nov. 1990 the plaintiff also obtained a petition signed by numerous
inmates who agreed that it would be virtually impossible to obtain a fair hearing in
this County.

94. In Dec. 1990 the plaintiff tried to exercise his common law legal rights,
and again on Feb. 2,1992, to remove a matter out of the municipal court and the
clerk's office refused to file or process them.

95. That Proseuctor Caplan did suborn perjury from Judge Steinberg as
indicated above.

96. In Jan. 1991 the plaintiff began to attempt to exercise his legal and
Constitutional rights to prefer and prosecute criminal charges, even if they be
counter or against public officials, to be tried simultaneously with the charges
pending against himself. After finally getting acknowledgment as to where
such charges may be filed, and after getting acknowledgment that the Sheriff's
office was the one who had the legal duty, obligation and responsibility to transport
the plaintiff to the clerk's office he contacted the sheriff's office for such arrange-

43

ment. The Sheriff's office turned the matter over to their internal affairs office of the jail who on or about **July 2, 1991** the office of internal affairs called me down and told me that on or during the week of 7/8/91 I would be taken to the clerk's office to file my charges. When that week came, they never took me and I was never taken. I even submitted letter to the Sheriff's Office and the internal affairs office to ascertain why they did not do as they stated they would and these letters were also left unanswered.  As a result of this deliberate indifferent attitude of the plaintiff's rights, the plaintiff was denied his **State Constitutional rights, his Federal Constitutional Rights** and denied a defense, taken to trial and found guilty and injured by having an 8 **year sentence inflicted** upon him with a 3 **year period of parole** ineligibility, lost his job with the Postal Service, had his reputation damaged, forced to **pay $30.00 to the V.C.C.B. and to pay for his attorney.**

97. **On March 14, 1991** the court called the plaintiff to court without prior notice or knowledge or reason why and did order the plaintiff to be evaluated to determine if he may proceed **pro se.** The plaintiff objected on the record and later in writing which was partly based upon the fact that I would be forced to testify against myself to prove the state's case as to my intent state of mind and that if the court truly had the power and right to do as it is, then there was no justified reason for not compelling such an evaluation 8 moths earlier when the **plaintiff** began seeking to **proceed pro se** and this or that prior inaction caused **Undue delay.** The matter was to be returned on **April 15, 1991.**

98. In **March 1991** the plaintiff did write **Judge Greene** regarding the **Fail-**

44

ure of the P.D. to apply for P.T.I. and the desire to so do, and he replied in typical fashion, I was free to discuss this with counsel.

99. The plaintiff did then apply for **P.T.I.** and the probation department never responded in any kind to this request and deprived **the plaintiff** of his **statutory due process rights to be heard and to appeal and to a decision.**

100. On **March 15, 1991** an article appeared on the **Front Page** of the **South Jersey Section** of the **Courier Post** whose headline read to the following effect. **Runnemede Bomb Suspect** wishes to proceed pro se, court orders him to be evaluated. This article had the following adverse effects:

A. If the plaintiff is evaluated and is permitted to go pro se the Jury, remembering the article, says to themselves, well, he was evaluated, he is representing himself therefore he is competent. He knew what he was doing and he is guilty.

B. If the plaintiff goes and he is found incompetent, the jury, remembering the article he is not **pro se**, therefore he is not competent, therefore by reason of insanity or diminished capacity and the law and the court may force him to be institutionalized.

In these scenarios **the plaintiff's freedom** is lost no matter what he does, and lastly, **the plaintiff** does not go and does not cooperate the following results occur.

A) He is found guilty of contempt of court and remains incarcerated and the trial is delayed till he cooperates and goes. And

B) If he goes and does not cooperate, he remains institutionalized for this evaluation for a greater period of time, causing additional trial delays and for which

his competence or incompetence may now be determined by observation only or upon the failure to cooperate which results in result **A or B above** as previously set out on this page. Both of these scenarios have the adverse effect of trial delay and injury. Again, there is a no win situation.

101. As of **May 1991** the plaintiff was terminated from his place of employment for failure to report to work. As a result, the plaintiff lost approximately **$1,675,903.13** in wages and retirement benefits from the **Postal Service**, not to mention the loss of coverage for medically related problems for his back condition under and through the U.S. Dept. Of Labor.

102. Between Oct. 1991 and Dec. 1991 the plaintiff filed at least 3 other motions which were all left unanswered by the court. **Lawrence v State Tax Commission, 286 U.S. 276, 282, 1932.**

103. That **Judge Steinberg** had testified that he had **signed over 15,000 search warrant application** in his life as a judge and yet when it came to me all that knowledge went out the window as a further example by conspiracy in that why such a judge had never called a federal court judge in his career but in this case he did so when I was the only one who had lawsuits pending against him at the time of the **warrant application** on both the **6/21/90 and 6/29/90 search warrants. Failure** of the **appearance of justice.** If there was no conspiracy between **Judge Steinberg and the John/Jane Doe Federal Judge** how did he know this Judge could be reached on the morning he called him. **Judge Steinberg** did not say he called the Judge at his home, but called him at the Court House about 2 hours before the

46

Judge would be in the Court House.

104. On 1/14/92 the plaintiff again tried to file a suit in the **Superior Court** and to proceed as an indigent without prepayment of costs and the plaintiff never received an answer or response from the court or the clerk's office.

105. The State Court Judges, **Steinberg** and **Greene**, did act in a manner contrary to the plaintiff's **Federal Constitutional rights** and did so without jurisdiction or Discretion. These rights were denied by the State defendants by the employment and usage of State processes contrary to these rights and did act under color of state law and processes to deny these rights and in their private capacity. These rights are:

A. The **right** of a **trial** of **my peers** and not a **cross section** of the neighborhood;

B. The **right** to a **probable cause hearing** regarding 4th Amendment **rights** to **arrest** and **jailing**;

C. To not be tried and convicted **except on the plain and solemn averment of** **at least 2 honest and reputable witnesses** to the overt act(s);

D. To **adequate assistance** of **counsel** that aids in the types of questions to be asked and not just to legal issues that arise;

E. To the **Common Law** of **England** as of **1776**. See Schick v U.S., 195 U.S. 65, 69-71; Chisholm v Georgia, 2 U.S. (2 Dall) 419, 435; Gerstein v Pugh, 420 U.S. 103, 114-116; Solem v Helm, 103 S.Ct. 3001 and Former Chief Justices Taft and Story;

47

F. To a **jury** that determines the **law and facts**;

G. The **right** to file counter **criminal charges** and try those charged simultan-esouly with those pending against you;

H. The **right** to have a **last will** and **testament** admitted as evidence based on the common law which holds it is exculpatory;

I. The **right** to be tried within **30 days after my arrest and arraignment or within 30 days** of the **indictment**; 18 U.S.C. 3161 and Blackstone;

J. Against **unreasonable searches and seizures**;

K. The **right** to a **probable cause hearing** that required the state to prove by evidence the basis for the charges filed against me;

L. The **right** to **reasonable bail** and **against cruel and unusual punishment**;

M. The **right to a fair and impartial hearing and tribunal**;

N. The **right** to the **equal protections** of the **law** that was deprived due to the Judges **enforcing the law** with an evil eye and heavy hand;

O. The **right** to not be **indicted without** the **indictment descending** to the specifics. Or in other words, the **right** to **notice** of the **specific charges**;

P. The **right not to be tried on evidence** that was not made part of the **indictment process And**

Q. The **right** to not be **treated any differently** than any of the people who's **rights listed above are and were entitled to.**

105. Due to the actions of the **defendants** the **Plaintiff lost the following sums** of money, that is the **defendants Committed Theft by Deception contrary to N.J.S.A. 2C:20-4.**

48

A. Lost wages and benefits = $1,675,578.13.

B. Attorney Fees = $295.00.

C. Fine = $30.00.

Total losses are =$1,675, 903.13.

106. Judge Greene did thus deliberately, intentionally, wilfully and know-ingly deprive the plaintiff of fair and impartial hearings, tribunals and trial and the entire record in the plaintiff's criminal complaint were in fact false and contrary to N.J.S.A. 2C:21-4 and 2C:41-1, et seq.

107. As a result of the criminal and fraudulent, conspiratorial, complicitori-al, concerted and joint action of the parties/defendants, the plaintiff's 8th Amend-ment rights were violated by being threatened, without remedy or recourse, by a Lt. Woods and Sgt. Bunn, was assaulted and ordered to be assaulted by a guard and Sgt. Bunn and was assaulted by an inmate and all without remedy or recourse, and was locked in solitary confinement and "punished" by such lock-ins contrary to the plaintiff's rights and guidelines and policies of the jail.

108. As a result of the threats occasioned at the hands of Lt. Woods and Sgt. Bunn, I wrote to the Sheriff's Office asking that charges be brought against these officials and no action was taken.

109. Two other inmates who tried to file criminal charges of the type spoken of in # 103 above, and who were also denied, were Mr. Wallace "Skip" Ingals, now in Rahway State Prison, and Mr. Garrison Winstead. (Both men were found guil-ty.)

49

110. After the court denied to suppress, the plaintiff himself got up and informed the court the police had searched in violation of their duty to and under the law as per 2C:58-7(a) and (c), 41:1-1, -2 and -3 and Art. 7, Sec. 1-1 of the State Constitution and they therefore committed acts of criminal misconduct of office and that he would eventually bring criminal charges against anyone and everyone who continued to prosecute this matter in violation of his rights, and as per his rights. See 18 N.J. @590-591. As a result, the judge was required by law, see Taylor v Hayes, 418 U.S. 488; Tumey V. Ohio, 273 U. S. 510 (1927); Morrissey V. Brewer, 408 U. S. 471 (1972); Mayberry v. Pennsylvania, 400 u.s. 455 (1971); State v Utsch, 184 N.J. Super. 575, 581; Regina v O'Grady, 7 7Cox C.C. 247, 1857; The Queen v The Justices of Suffolk, 18 Q.B. 416, April 29, 1852; *US v. Kennedy, 682 F. 3d 244, 253, 257-258, Court of Appeals, 3rd Circuit 2012 and In re Advisory Letter No. 7-11, 61 A. 3d 136-144 - NJ: Supreme Court 2013* to recuse himself on his own motion and he refuses to do so thus committing another criminal act by so doing, an act he has no discretion to do. He did War against the Constitution. Aaron v Cooper, 358 U.S. 1, 18-19, 1958.

111. At this Suppression hearing, Sgt. Simon again did knowingly testify falsely by again stating that a live bomb was discovered which had to be disarmed and committed a second fraudulent impression that by the existence of such a device, an exigent/emergent situation existed and also that the device had to be disarmed all when there was no factual basis stated by Sgt. Simon as to the belief a live bomb in fact existed in the plaintiff's possession and in his apartment.

50

112. I did obtain a signed petition by several inmates who agreed that crimes had been committed against the plaintiff.

113. Aside from the pretrial publicity as set out above, there were at **least 5 other articles which had 2 adverse effects.** These effects were the stigma and prejudice created by the content; and the trial delay caused by the necessity to allow time to pass to claim the emotions of potential jurors and to forget what they had read. One creates a due process problem, the other creates both a due process and rights problem relative to speedy trial.

114. **Despite the police having the where about of the plaintiff and the means** of **contacting** the plaintiff's **father**, and their having taken the plaintiff's **car keys,** they took no **precautionary steps or steps that any reasonable person would take** to ensure the **plaintiff's** property was protected and as a result, the Plaintiff lost **his automobile worth about $1,250.00.**

115. Throughout this case, **Greene has** denied the **plaintiff** of the equal protections of the laws, and considerations thereunder, by bending the laws or rules repeatedly against the **plaintiff and in favor of the state,** or even breaking the laws and himself committing criminal acts and approving of criminal acts of the other **defendant parties.** (i.e. the defendants are trained professions who know the law, required to know the laws and procedures, and the consequences of their actions or inactions, yet the court continued to grant them the favor while giving no leeway to

51

this untrained, un-licensed non-professional.)

116. **During the trial** and **for trial preparation, Mr. Walshe** agreed to issue all subpoenas for the plaintiff and failed to so do. The plaintiff was left at trial with no defense witnesses to call.

117. During the **13 ½ months** that **master counsel was in control** of the plaintiff's **criminal case, counsel failed** to move for **speedy trial, he** refused to raise or assert or protect other **constitutional rights** unless continually pushed, he never communicated with the plaintiff, he failed to keep plaintiff informed, there were disputes between the **plaintiff and counsel, he never informed the plaintiff** of the court dates, he did **no investigative work relative to the evidence or witnesses, and made no efforts to gather evidence or other reasonable steps any reasonable attorney would take.**

118. **At the trial, Mr. Simon** again testified falsely regarding the condition of the bomb.

119. **At trail Mr. Dawson** did testify falsely by making statements as to a belief of something when he had no such knowledge or belief.

120. **That Judges Greene and Steinberg** did come in direct conflict with the mandates of the U.S. Constitution under the 4th, 6th & 8th Amendments and Art. VI and did willfully and intentionally make rulings and take actions that they knew were not in line with the legal requirements under the U.S. Constitution contrary

to the law of such constitution and the plaintiff seeks to sue them in their official

capacity by losing/usurping jurisdiction to try and convict the plaintiff on fictitious

charges as well as in their private capacity for the wrongs that they levied against

Mr. Reardon. See N.J.S.A. 59:3-14 for liability of public employees.

121. That Judge Steinberg and Sgt. Simon did conspire to injure **Mr. Rear-**

**don deliberately** by agreeing to find a claim of probable cause to the warrant-less

search my apartment knowing full well that there was no probable cause so stated

before, during or after the search as the warrant failed to identify the factual basis

leading them to believe that **(a) Mr. Reardon** was **engaging** in a crime or about to

**engage in a crime** within his apartment and what crime that was; **(b) What facts**

lead them to believe **Mr. Reardon** had **criminal implements** and **what implements**

the police were looking for; (c) What was the basis for the belief such implements

would be in **Mr. Readon's apartment;** (d) what was the **exigent circumstances** that

**warranted immediate action** since **Mr. Reardon** could not destroy any potential evi-

dence and there was no facts supporting a claim that **Mr. Reardon** in fact had a

**bomb in his apartment;** (e) what was the **factual basis** for these things and why did

**Sgt. Simon specifically seek out Judge Steinberg** for the **warrant** when the Police

**and Judge Steinberg knew that** there were **pending lawsuits** against them, or why

he wasn't sent to another judge or why Sgt. Simon couldn't seek out another judge

and that these acts fly in the face of appearance of justice; or (f) why **Judge Stein-**

53

berg did have a secret conversation with an unknown **Federal Judge who** apparently **ensured Judge Steinberg** that he would be protected if I sued him and that he was and **(g)** Given the **police knew on 6/19/90 and 6/20/90** as much as they knew on 6/21/90 why they did not seek a search warrant then if the facts were the same for all 3 **dates and probable cause allegedly existed.** See **Cannons of Judicial Conduct, Cannon 3A(6).** It is also interesting to note that that the police knew of my many lawsuits and that I sought relief in the courts to my rights and had in no way at any time prior threatened to commit a crime as to my belief that my rights have and were being denied and that in this case where they were informed of my intent to commit suicide some how lead them to believe I would commit some criminal act against another for which they had no basis to believe this to be true and thus that I was going to commit a crime now.

122. That in order to carry out the conspiracy to injure and jail **Mr. Reardon** and prevent **Mr. Reardon** from proceeding with the **2 lawsuits pending against** the **Runnemede Police, including Sgt. Simon and Judge Steinberg on bogus crimes,** the police elicited the aid of **Judge Steinberg** to allow them to go on a witch hunt against **Mr. Reardon,** and to ensure they could do what they planned they got the **Runnemede Ambulance Crew and Our Lady of Lourdes Hospital** to refuse to treat me with **oxygen or CO poisoning** and to ensure they could have all the time in the world to build a fictitious criminal complaint against **Mr. Reardon** to get even with

54

him for suing state judges and other state officials as a **pro se complainant.**

123. That the **Ambulance crew** and the **Hospital staff** did agree to refuse to treat **Mr. Reardon** with **oxygen,** the **normal treatment for CO poisoning,** so as to give the police and judge time to do what they did and **for a total disregard for the care of a patient.**

124. That **Judge Greene** did conspire with **Simon and Steinberg** to protect the illegal search of the **plaintiff's apartment** and to ensure that the fictitious complaint against **Mr. Reardon** could be brought and tried against the laws and rights of the plaintiff.

125. That **Judge Steinberg** did also conspire to grant the illegal search warrant by placing this illegally insufficient warrant into the system to be used to concoct a crime when no such crime was committed by the **plaintiff.**

126. **That Judge Greene** did deny all the rights listed above **in the furtherance of this conspiracy to get back at Mr. Reardon** for all the civil **suits he had filed against state officials. Judge Greene** further aided in the conspiracy by doing the following. Remember there were lawsuits pending against this  Judge for bias at all times.

A. He kept granting the state delays for trial when the state had said that all the evidence was in and it was ready to go to trial in **Oct. 1990** and on at least **4 occasions** stated no more delays would be tolerated. But every time the state got

55

another piece of evidence the judge postponed the trial.

B. He denied me the rights to admit my last will and testament as exculpatory evidence at common law and current law when it dealt with the facts and alleged state of mind of the plaintiff at the time the will was made.

C. That he refused to allow me to prevent the expert's testimony of D. Sgt. Dawson from coming into evidence when I was entitled to know it before the trial, asked for it in discovery and was denied by the Prosecutor and Judge Greene denied my request to prevent it from coming in. It did not matter whether Ms. Caplan did not know of said request as it was made to Mr. Rossetti, who had ample time to comply with said request.

D. That he in fact did claim there was a probable cause to warrant-lessly search Mr. Reardon's apartment when no such basis was ever proffered in the court to any judge.

E. That he allowed the fallible memory of a judge to re-construct in court at a hearing on the 6/29/90 search warrant of D. Sgt. Dawson contrary to the well established case law. That is Judge Steinberg could not remember my case in September 1990, about 3 months later but he could remember 16 months later what happened in the 6/29/90 search warrant application of D. Sgt. Dawson.

F. That he allowed an ex-girlfriend to testify to all the alleged claims of my harassment of her after stating she could not so testify and then in front of the jury

56

did in fact find that I had harassed her to the prejudice of **Mr. Reard**on at trial and then by using it as an aggravating factor for sentencing contrary to case law that if he was competent he should have known it.

G. **Judge Greene** did also apply the aggravating and mitigating factors for sentencing subjectively and not objectively.

H. That G was carried out to allow him to give me a sentence with a period of parole ineligibility as by the time the case was tried I had already spent more time in jail than I would have had to spend in jail before being paroled.

I. That **Judge Greene** did apply the factors both at trial and sentencing contrary to the law on such.

127. **D. Sgt. Dawson** did agree to partake in the conspiracy by the fact that he knew of the lawsuits pending against **Judge Steinberg** and **Sgt. Simon** and that they were gunning for him and he used this to get a subsequent search warrant to re-search plaintiff's apartment. **Sgt. Simon** admitted the search was thorough, **but D. Sgt. Dawson** did not believe so as he sought a warrant to search too.

128. Further, **Judge Greene** showed additional bias in that plaintiff was given the right to file any motion he wanted before trial and that the State was given a **2 week peri**od to respond in kind to these motions. The state failed to answer the motions and my due process rights to notice of the state's position and contention prior to the return for the motions. See *Spielman v Hildebrand , 873 F.2d 1377,*

57

*10ᵀʰ Cir. 1989, citing Mathews v Eldridge, 424 U.S. 319, 333,1976.* These cases deal with the fact that due process means a right to be meaningfully heard and respond. How does one respond if there is nothing to respond to? See also Page v Schweiker, 786 F.2d 150, 3ʳᵈ Cir.; Taylor v Hayes, 418 U.S. 488; Tumey V. Ohio, 273 U.S. 510 (1927); Morrissey V. Brewer, 408 U. S. 471 (1972); Mayberry v. Pennsylvania, 400 U.S. 455 (1971); In Re Gault, 387 U.S. 1, 1967 and H.E.S. v J.C.S., 175 N.J. 309, 2003.

129. That Judge Greene did take all necessary actions to maintain the bogus charges against the plaintiff by denying him everything he challenged in the state.

130. That Judge Greene did also deny Mr. Reardon on virtually every challenge made that was prejudicial to the plaintiff and to due process to a fair and impartial hearing and tribunal to ensure Mr. Reardon was convicted on these bogus charges, contrary to the law and plaintiff's rights, under the U.S. Constitution.

131. That the defendants did willfully agree to ignore the law and their responsibility to and under the law and the plaintiff and did so as to teach Mr. Reardon a lesson for suing judges and other state officials as a pro se plaintiff and is simply a carry over from the lawsuits filed against Judges Paige, Mennetti, Miller, DiMartino and Steinberg and they did agree to violate Mr. Reardon's rights and injure him in his person, property and rights and did so knowing full well that the charges were bogus, in violation of the law and the U.S. Constitution

58

and did enforce state proceedings contrary to the **Federal Constitution and Law.**

132. That the only possibility for the actions of the defendant Judges are (A) they were competent and knew the law and deliberately ignored it to injure the plaintiff in his person, property or rights and that they (1) did so to place the law at defiance with impunity; (2) They conspired to deliberately injure the plaintiff in his person, property and rights to get back at him for plaintiff's lawsuits against Judges or (3) They showed bias/prejudice against **Mr. Reardon** which required them to recuse themselves in this case and lose personal, and thus all, jurisdiction due to the lawsuits pending against them at the time of their actions and the appearance of justice not being satisfied; or (B) The Judges are incompetent to sit on the case in the state since they did not know the law and (1) had a duty to protect the plaintiff and his rights and they failed to do that and that required them to recuse themselves and lose personal, and thus all, jurisdiction. *Boyd v U.S., 116 U.S. 616, 635. 1866;* (2) Did place the law at defiance with impunity, *Butz v Econo mou, 98 S. Ct. 894, 2910, 1978.* (C) Did in fact conspire with all the other defendants and to vent their spleen to punish Mr. Reardon for suing Judges. *Offut v U.S., 348 U.S. 11, 14.* (D) they lacked subject matter jurisdiction to deny the rights listed above in reference to **Judge Greene** or (E) They lost subject matter, and thus all, Jurisdiction to sit on **Mr. Reardon's** criminal matters in the State.

133. Motive of Judges Greene & Steinberg: To vent their spleen on Mr. Reardon for having sued Judges Paige, Mennetti, DiMartino, Miller and themselves. There was pending lawsuits against Judges Steinberg and Greene at the time of their actions in Mr. Reardon's criminal charges.

These Lawsuits had the following effects:

A. They Stripped Judge Steinberg and Greene of personal jurisdiction and voiding there decisions, findings, opinions and orders; and

B. That Judge Steinberg, who I believe was the criminal assignment judge, could not assign Judge Greene or any Judge to try this case in Camden County for this reason as well as the fact that Fellow Jurist R. Rossetti did transfer a civil case of mine, for appearance purposes, due to the fact that a County Court employee was a defendant to said suit. His order was entered in January 1990. Judge Steinberg, had extensive extra-judicial contact with Ms. Reardon, my ex, who is and was a court clerk in Camden and a possible target of my alleged crimes which also stripped him of personal jurisdiction by failing to transfer my charges to another County.

134. The 3rd Cir. stated in *Mancini v Lester, citing Cashen v Spann, 66 N.J. 534, 1975* that the law in the state controls the type of immunity that state officials are entitled to and I cited N.J.S.A. 59:3-14 which holds that state officials have no immunity for acts that are done fraudulently, criminally or willfully and the plaintiff states that the actions of the defendants are willful/intentional, carried out by

60

Fraud and that some acts are in fact criminal. False imprisonment, Kidknaping, Theft, Extortion, Robbery, Official Misconduct and all other 2C crimes listed and that since the liability clause applies to all "public Employees" and whereas N.J.S. A. 2A:81-17.2a defines "public employee" as Police, Clerks and even judges to name a few, then even granting immunity at the federal level, the judges are not immune at the State Level for their actions.

135. The defendant Dawson is an employee under N.J.S.A. 2A:81-17.2a and he did wilfully and intentionally commit perjury in the trial of the plaintiff in the state court by swearing that the plaintiff had built the bomb to use it against the person or property of another when he knew that the plaintiff was attempting to commit suicide and for which plaintiff believed he would be dead and thus could in no way use it as claimed by the state and that said perjured testimony, fraud upon the court, false swearing and fraud was his statement that the plaintiff possessed the bomb with the intent to use it against the person or property of another when he had no such knowledge or belief that the device could or would have in fact been used as testified to and that this perjured and fraudulent statement and act was in fact material when it was the very basis of the prosecution. That the plaintiff's state Constitutional Rights allows him to recover damages for such perjured statements

61

in the criminal trial of the plaintiff in the state and then again in this court when the state swore he did nothing wrong. See **Concessions & Agreements of New Jersey, Article XX; 1776 New Jersey Constitution and Art. 1,Cl. 21 and Art. XI, Cl. 1 of the 1947 New Jersey Constitution.**

136. That the state did in fact carry out a trial and prosecution of the plaintiff based upon perjured testimony by **Sgt.s Dawson & Simon, Mr. Rossetti and Judge Steinberg** and by **Prosecutors** continueing with the bogus charges contrary to plaintiff's rights and did so try this pro se plaintiff as recognized as contrary to such in the case of *Brady v Maryland, 373 U.S. 83, 86 1963.*

137. That **Judge Steinberg** did **commit perjury** in a probable cause hearing by trying to claim he had remembered what he did on **6/29/90 when he could not even remember what he did 3 months after the signing of the 6/29/90 search warrant** and when he had no real basis to believe what he said was true as his claim was that he signed this search warrant at around **3:15 pm** but couldn't explain how there was another search warrant signed at **9 pm.**

138. That **Prosecutor Caplan also suborned perjury of Sgt. Dawson** when he testified that he knew what the plaintiff intended to do with the bomb when he could not and did not know what the plaintiff's intent state of mind was and that it

62

was that the plaintiff intended to use it against himself till he saw a news article on the television on CO poisoning and he then abandoned the bomb and went to a secluded area and set up his car to do such, which Sgt. Dawson knew about, and then tried to commit suicide and believed he would in fact be dead.

139. The plaintiff was entitled to a jury of his peers which should have consisted of (a) all white men between the ages of 25 and 60; (b) men who are Christians; (c) Men who hold a bachelor's degree in the sciences & (d) men who earn between $25000.00 and $35,000.00 a year as such would not be a violation of the 14th Amendment (i) as white men would not be able to sit in judgment of Black men nor Black men sit in judgment of white men; (ii) Women of any race could not sit in judgment of men and men in judgment of women and would not thus exclude jurors on race but uphold the fact that white men are not equal to black men and vice-versa, nor would men be equal to women and vice-versa and the leading U.S. Supreme Court decisions on juries implies that blacks could not sit as jurors in any case, not cases in which they would be affected by. If you get a white juror who lies and says he can be fair in trying a black man when in fact he is lying to purposefully find him guilty due to his bias, how is the trial of a black man in such a case fair?  How do you know the juror will tell the truth? Thusa black man

63

can be assured of a fair and impartial hearing, trial and tribunal of "Peers" are

upheld as by the plaintiff along with the common law of England. To add further

credence to this, Our founding fathers held that the trial of a propritor had to be a

jury of fellow proprietors, not the average person and vice-versa, a proprietor

could not sit in judgment of the common man nor could the common man sit in

judgment of nobles or vice-versa and the plaintiff was denied his jury of his peers.

*Ex Parte Virginia, 100 U.S. 339, 369.*

140. That the defendants did **knowingly, deliberately and intentionally en-**

**ter void orders** into the record in contradiction to the limits of their authority in and

rights as set out in the following case law, or acted in concert with the lack of

authority of the Judges, that says:

> *A judgment may not be rendered in violation of constitutional protections.*
> *The validity of a judgment may be affected by a failure to give the constitu-*
> *tionally required due process notice and an opportunity to be heard. Earle*
> *v. McVeigh, 91 US 503, 23 L Ed 398. See also Restatements, Judgments '*
> *4(b). Prather v Loyd, 86 Idaho 45, 382 P2d 910. The limitations inherent in*
> *the requirements of due process and equal protection of the law extend to*
> *judicial as well as political branches of government, so that a judgment*
> *may not be rendered in violation of those constitutional limitations and*
> *guarantees. Hanson v Denckla, 357 US 235, 2 L Ed 2d 1283, 78 S Ct 1228.*
> *It is a fundamental doctrine of law that a party to be affected by a personal*
> *judgment must have his day in court, and an opportunity to be heard.*
> *Renaud v. Abbott, 116 US 277, 29 L Ed 629, 6 S Ct 1194. Every person*
> *is entitled to an opportunity to be heard in a court of law upon every*
> *question involving his rights or interests, before he is affected by any judici-*
> *al decision on the question. Earle v McVeigh, 91 US 503, 23 L Ed 398.*
> *A judgment of a court without hearing the party or giving him an opportun-*

64

*ity to be heard is not a judicial determination of his rights. Sabariego v Maverick, 124 US 261, 31 L Ed 430, 8 S Ct 461, and is not entitled to respect in any other tribunal. A void judgment under........law is one in which rendering court lacked subject matter jurisdiction over dispute or jurisdiction over parties, or acted in manner inconsistent with due process of law or otherwise acted unconstitutionally in entering judgment, U.S.C.A. Const. Amed. 5, Hays v. Louisiana Dock Co.,  452 N.E.2D 1383 (Ill. App. 5 Dist. 1983); U.S.C.A. Const. Amend. 5 – Triad Energy Corp. v. McNell 110 F.R.D. 382 (S.D.N.Y. 1986; Fed. Rules Civ. Proc., Rule 60(b)(4), 28 U.S.C.A.; U.S.C.A. Const. Amend. 5 – Klugh v. U.S., 620 F.Supp. 892 (D.S.C. 1985); Eckel v. MacNeal, 628 N.E. 27, 741 (Ill. App. Dist. 1993); U.S.C. A. Const. Amends. 5, 14, Matter of Marriage of Hampshire,  869 P.2d 58 (Kan. 1997); In re Estate of Wells, 983 P.2d 279, (Kan. App. 1999). <u>The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Armstrong v Manzo, 380 U. S. 545, 552 (1965). See Grannis v. Ordean, 234 U. S. 385, 394 (1914). Irvin v. Dowd 366 US 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751, 1961:The failure to accord an Accused a fair hearing violates even the minimal standards of due process. In re Oliver, 333 U. S. 257; Tumey  v. Ohio, 273 U.S. 510. "A fair trial in a Fair tribunal is a basic requirement of due process." In re Murchison, 349 U.S.133, 136.</u>*

It is clear that a court cannot exercise its power to the detriment of a litigant when *in personam* jurisdiction has not been established, and that such action would violate the **Due Process Clause**. *See, e.g., <u>Peralta v. Heights Medical Center Inc., 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988)</u>* and cases there cited.

141. That **Judges Greene and Steinberg** were required by statute and case law to recuse themselves from **Mr. Reardon's criminal charges/proceedings** and thus violated due process of law to a fair and impartial hearing and tribunal by said judges and thus lost personal, and thus all, jurisdiction to render any **decisions**

, orders, decrees or other findings in said criminal proceedings and **Mr.s Rossetti,**

**Farmer, and Walshe, and Ms. Caplan did knowingly, willingly, and intentionally**

go along with the sham proceedings in the furtherance of the conspiracy to jail **Mr.**

**Reardon** on **bogus charges** to get back at him for having dared to sue other judges

and other officials pro se. See **Brady v Md., 83 S.Ct. 1194, 1963 and Mitchum v**

**Foster, 407 U.S. 25.**

142. The plaintiff hereby seeks to bring a collateral lawsuit on the **1989-1992**

cases  listed in **statement 122** above. These cases are sought to be reopened by this

collateral Lawsuit for Fraud upon the Court as per **F.R.C.P. 60(d)(3) and** related

**Laws on collateral proceedings, along with this court's pendent jurisdiction over**

**related State Causes and laws** which are covered in these cases as per **N.J.R.C. 4:**

**50-1, 5:50-3, and 3:22-4 and related case law** and since these State rules allows an

indefinite period of time within which to set aside orders fraudulently obtained or

Which are unjust or which violates a persons U.S. or State Constitutional rights

and that these procedures open anew the old cases, the Statute of limitations does

not begin to run till the state claims are settled and since they are Intertwined with

the Federal Issues he statutes of limitations begins anew from the state issues and

66

a hearing on such. See all the case law cited throughout this complaint on said issue as well as the attached exhibits or memorandum of law.

This Lawsuit is also a collateral Lawsuit based on void proceedings as to **F.R. 60(b)(4) for Jurisdictional and/or Discretionary Defects, Whitman v Thompson, 85** U.S. 457, 466-469, 1873; and for violating Mandates upon the defendants. **Boyd v 116 U.S. 616, 635, 1866 for Judges for Judges and Prosecutors Bogan v Scott-Harris, 523 U.S. 44, 51-52, 1997 and State v Zisa, N.J. App. 2015.**

143. The Plaintiff was tried and found guilty on specific acts that were not alleged or evidenced in the indictment contrary to the **Common Law** and the plaintiff's rights thereunder. See Blackstones Commentaries, Book 4, Chapter 27, Pages 351-352.

144. The Plaintiff was denied adequate notice of the specifics of the charges prior to trial and said notice did not come till about 4 weeks before the trial. See In Re Gault, 387 U.S. 1, 25, 29, 53, 1967 and H.E.S. v J.C.S. Supra.

145. Judges Greene and Steinberg in fact lost jurisdiction, did usurp jurisdiction, over the plaintiff's criminal proceedings back between June 20, 1990 and February 20, 1992 due to the lawsuits the plaintiff had against these Judges based upon the *Common Law of England, in particular Regina v O'Grady, 7 Cox C.C. 247, The Queen v The Justices of Suffolk, 18 Q.B. 416, Q. B. EASTER TERM.; April 29th, 1852 and The Queen v the Justices of London, London,18 Q.B. 421, April 29th, 1852* which holds that when a Judge should recuse himself and he does-

67

not the proceedings are *Invalid* or in other words *Void*.

146. The **Plaintiff** had the following lawsuits pending prior to or during the actions and involvement of **Judges Steinberg and Greene.**

    A. 85-0097;

    B. 89-00223;

    C. 89-01870;

    D. 90-04551; and

    E. 91-0557.

147. The **Defendants Steinberg and Greene** had a very strong and personal interest in the **Plaintiff** which was consistent with the necessity for them to recuse themselves *sua sponte* as per N.J.S.A. 2A:15-49(e) and *Regina v O'Grady, 7 Cox C.C. 247; The Queen v The Justices of Suffolk, 18 Q.B. 416 ; Q.B. EASTER TERM.; April 29th, 1852 and The Queen v The Justices of London, London,18 Q.B. 421, April 29th, 1852* and their failure to so do requires the finding of **all orders,** **decrees, judgments and decisions are** *null and void* or *invalid* and being contrary to the law and the others named exploited that interest to injure **Mr. Rerdon.** They did **Obstruct Justice contrary to N.J.S.A. 2C:29-2 and did commit Official Misconduct contrary to N.J.S.A. 2C:30-2.**

148. The conduct of **Judge Steinberg and Sgt. Simon** as stated above was such that they did create a **false and Fraudulent record** contrary to N.J.S.A. 2C:21-4 and 2C:28-7; that said conduct also **violated N.J.S.A. 2C:29-2** which is they

obstructed Justice and they did also commit **official Misconduct** contrary to N.J.S. A. 2C:30-2 all to injure the Plaintiff in his person, by **false charges and jail, in his property,** the eventual loss of his job and over $1,000,000.00 in benefits from his job, $295.00 in attorney fees and $30.00 for a VCCB Penalty and in his rights to **Due Process** to fair and impartial hearings and tribunals and did commit theft by deception contrary to N.J.S.A. 2C:20-4.

149. The defendant Sgt. **Dawson** knew of the Plaintiff's Lawsuits against this **Judge** and the obvious **Bias against the Plaintiff and Sgt. Dawson** did specifically seek out **Judge Steinberg** because he knew the **Judge would be gunning** for the **Plaintiff** and he would not have to worry about the *Doctrine of Fruits of the Poisonous tree as the Judge* would take care of that. He did thus **Obstruct Justice contrary to** N.J.S.A. 2C:29-2 **and commit Official Misconduct contrary to** N.J.S.A. 2C:30-2 **and did make a false record contrary to** N.J.S.A. 2C:21-4 **and** 2C:28-7.

150. Sgt. **Simon and Judge Steinberg** did commit and make a **false record** contrary to N.J.S.A.2C:21-4 and 2C:28-7, did **Obstruct Justice Contrary to** N.J.S.A. 2C:29-2 **and did commit Official Misconduct contrary to** N.J.S.A. 2C:30-2.

151. The **Plaintiff has never raised issue** with **Judge Steinberg's Perjury,** with the failure to provide the plaintiff with a **probable cause hearing** before **jailing for an extended period of time,** to notice of the specifics of the charges and that the **plaintiff** was tried on evidence that was not **contained in the indictment. This is Obstruction** of Justice contrary to N.J.S.A. 2C:29-2 **and Official Misconduct contrary to** N.J.S.A. 2C:30-2 **and a False Record contrary to** N.J.S.A. 2C:21-4 & 2C:28-7.

69

152. The defendant Rossetti did violate the Plaintiff's right to a Probable Cause hearing, as required by Law, that he knew or should have known and thus denied the plaintiff the basis for the State's 2nd Degree criminal charges when the proofs for such charges did not come till after the indictment and only about 4 weeks prior to the trial of the plaintiff contrary to the law. The Defendant did make a false record contrary to N.J.S.A. 2C:21-4 and 2C:28-7, did obstruct Justice contrary to N.J.S.A. 2C:29-2 and did commit official misconduct contrary to N.J.S.A. 2C:30-2.

153. The plaintiff was thus denied of his right to notice of the specifics of the Charges prior to indictment and prior to prolonged incarceration contrary to the law that the defendants either knew or should have known since the laws were least 114 years old. This was the creating of a False record Contrary to N.J.S.A. 2C:21-4 and 2C:28-7, was Obstruction of Justice contrary to N.J.S.A. 2C:29-2 and was Official Misconduct Conttrary to N.J.S.A. 2C:30-2 by Mr. Rossetti.

154. The Defendants Rossetti and Caplan either knew or should have known that under the circumstances of this Plaintiff's case that Both Judges Steinberg and Greene were required to recuse themselves *sua sponte* and that if they did not that they were required to so direct such position to the court and these defendants failed to do that contrary to the case law that dates back 139 years. This was Obstruction of Justice contrary to N.J.S.A. 2C:29-2 and Official Misconduct contrary to N.J.S.A. 2C:30-2 and the creation of a False Record Contrary to N.J.S.A. 2C:21-4 and 2C:28-7.

155. The defendants Steinberg, Greene, Rossetti and Caplan did all have a

70

covert meeting of the minds to continue to allow **Judges Steinberg and Greene** to sit on plaintiff's criminal trial as they knew that **Judges Steinberg and Greene** would make sure that the Plaintiff would be found guilty of the false charges and so that they could get back at the plaintiff, vent their spleen on the plaintiff and show him who has the power. They did in fact make a **false record contrary to N.J.S.A. 2C:21-4 and 2C:28-7, did Obstruct Justice** contrary to **N.J.S.A. 2C:29-2 and did Commit Official Misconduct** contrary to **N.J.S.A. 2C:30-2.**

156. The **Defendant Caplan,** did have a **covert meeting of the minds with Sgt. Dawson** by allowing **him to commit perjury** as to his belief of the **plaintiff's State of mind** when he had no legal basis for such contrary to **N.J.S.A. 2C:28-1 and 2C:28-2** and they did make a **false record** contrary to **N.J.S.A. 2C:21-4 and 2C:28-7, did obstruct Justice** contrary to **N.J.S.A. 2C:29-2** and did commit **official misconduct** contrary to **N.J.S.A. 2C:30-2.**

157. The **defendants Caplan and Greene** did have a **covert meeting of the minds** by allowing **Ms. Caplan to enter into evidence** specific claims that were not contained in the indictment contrary to the well known and **established law** that both **she and Judge Greene Knew or should have known** since it is at least **235 years old.** They did **create a false record** contrary to **N.J.S.A. 2C:21-4 and 2C:28-7, did obstruct Justice**

71

contrary to **N.J.S.A. 2C:29-2** and did commit **Official Misconduct** contrary to **N.J.S.A. 2C:30-2.**

158. The **defendants Rossetti and Caplan** did have a meeting of the minds with **Judge Greene** to allow the **Plaintiff** to be **arrested and detained** for a prolonged period of time without **Mr. Reardon's right to a Probable Cause hearing** and thus **to know the evidence and basis for Plaintiff's arrest and incarceration** contrary to the well settled law of **Blackstone's Commentaries, Book IV, Chapter 22, Page 293** for which these defendants knew or should have known that the **Plaintiff was being unconstitutionally detained** and thereby made a **false record contrary to N.J.S.A. 2C:21-4 and 2C:28-7,** did **obstruct Justice** contrary to **N.J.S.A. 2C:29-2** and did commit **Official Misconduct** contrary to **N.J.S.A. 2C:30-2. This law is** at least **235 years old.**

159. Given the case law cited Above, and given the case of *Peretz v U.S. 501 U.S. 923, 953, 1991* the Defendants Steinberg and Greene lacked jurisdiction, Discretion as set out in the mentioned law and did violate Mandated they were legall required to comply with and their orders are in fact *null and void* and should be set aside. *See Thompson v Whitman, 85 U.S. 457, 466-469, 1873.*

As per this **court's right of Pendent Jurisdiction,** given the court so has such jurisdiction, and given that the following rights and issues allowing for relief, the

72

plaintiff's conviction is unconstitutional for the following reasons.

A. Based upon the **Common Law of England dating back to 1852,** All orders, judgments, decrees and findings of **Judges Steinberg  and Greene are** *null and void* and must be set aside. That is, any prior contact with or knowledge about a party whose case is before the **Instant Judge** requires the **Judge** to recuse himself and if **He/She fails to so do,** the findings and conviction of the party are declared *Invalid or in other words Void.*

B. The **indictment** against the **plaintiff is defective** since it **did not descend to the specifics of the charges**. That is, the indictment merely stated that the **plaintiff** did possess a **Bomb for an Unlawful purpose.** It did not say it was a **parcell bomb** and it did not list, if such was the case, who it was meant for.

C. Due to **Number B** above, the **indictment failed** to give the **plaintiff adequate notice of the charges.**

D. Due to **# A** above, the **plaintiff was denied his right of Due Process Right to fair** and **impartial hearings, tribunals and trial.**

E. The **plaintiff was denied his right to a probable cause hearing** which required the **State to produce it's evidence** before **prolonged incarceration** and for which the **state failed to proffer any basis for the 2nd Degree Charges** till around

73

November 1, 1991 and for which they had no proof of the 2nd degree charges.

F. The plaintiff, since there was no basis for the 2nd Degree charges, was held on excessive bail of $100,000.00 full cash for a 3rd degree crime. And

G. The plaintiff's trial was tainted and violated Due Process given that the State was permitted to present evidence of a specific nature that was not contained in the indictment.Under the State Laws, their equivalent for N.J.R.C. 3:22-4, allows the setting aside of the conviction and proceedings if the defendant's rights under the State or U.S. Constitution were violated which under this court's Pendent Jurisdiction, this court can hold a plenary hearing, in accordance with State law, to determine if the plaintiff's rights were so violated and if they were, the Violation of my rights are new and remedial in this court by way of a lawsuit for damages.

160. The Plaintiff is not required to seek out state redress before proceeding in federal Court. See *Monroe v Pape, 365 U.S. 167, 193, 1961* which hold that a person is not required to seek relief in the State first before seeking relief for the protections of Constitutional Rights.

161. The defendants (A) Conspired and had a meeting of the minds and (B) they did act under color of State law, custom or usage to deny the plaintiff of his rights as stated above.

162. The Defendants Galken and Kestin did lack jurisdiction as per *Freytag*

74

v *Comm. Of Intern-al Revenue, 501 U.S. 868, 896, 1991* and the fact that **Judges
Greene and Steinberg** lost or usurped their **jurisdiction** as per the **Common Law of
England and they in fact made a false record** contrary to N.J.S.A. 2C:21-4, 2C:28-
7, did obstruct Justice contrary to N.J.S.A. 2C:29-2 and Did commit Oficial Miscon
-duct contrary to N.J.S.A.2C:30-2.

163. All the **defendants** did act under color of Law, custom or usage to
conspire to injure the **plaintiff** by violating the **Plaintiff's U.S. and State Constitu-
tional rights** contrary to N.J.C.R. 3:22-4 and for which there is no time limit to
bring a motion to court when such is the case and the plaintiff invokes this court's
*Pendent Jurisdiction* to hear and settle these violations and to allow this case to go
to trial.

164. The **plaintiff** had no way of knowing the law on the rights listed in
Statements in the complaint above and only learned of said rights by accident in
April 2014.

165. The **Defendants** have discriminated against the plaintiff as per *Nation-
al Life InsuranceCo. v. United States, 277 U.S. 508, 530, 1928* by denying the
**plaintiff** of the same rights as other criminal **defendants** due to his being **pro se**
and/or because of the **animus of the defendants** because the **plaintiff** has tried to
sue judges in the past. The **Rights** the **plaintiff was denied or had violated are:**

A. 4th Amendment rights against unreasonable searches and seizures when
the Defendants Rossetti, Caplan, Simon and Dawson failed to place before the
court proof of probable cause or exigent circumstances. Or proof the subsequent

75

Search on 6/29/90 was not the fruits of the poisonous tree.

B. My 8th Amendment rights to reasonable bail.

C. 4th Amendment right against unreasonable arrest.

D. The plaintiff was denied of the right of effective assistance of counsel as per the 6th Amendment of the U.S. Constitution and Common Law.

E. The plaintiff was denied his 6th Amendment right to speedy trial.

F. The plaintiff was denied his Due Process rights to have at least 2 witnesses against him that can verify the overt acts when only 1 witness was so provided. And

G. The plaintiff was denied of Fair and impartial hearings, proceedings and trial.

166. The plaintiff only discovered the Common Law Decisions on recusal, and what happens if the Judge does not so recuse himself, on or about 11/1/14.

167. The plaintiff seeks damages against the defendants Simon, Dawson, not Caplan and Rossetti for their perjury and subornation of perjury as per the plaintiff's State Constitutional Rights and Remedies as per the historical Constitu -tional Rights as per Article 1, Clause 21 of the 1947 N.J. Constitution. This claim is that the perjury show a conspiracy.

168. On or about 7/1/90 Mr. Reardon was told by a friend, John DeFerro that he was in a bar in Philadelphia, Pa. and was told by a Philadelphia Police man that said that he suggested Mr. DeFerro stay clear of me as the State was out to get me.                          76

Facts and Laws on Actions from 2009 to 2012:

The Plaintiff, John E. Reardon, did submit a motion to the **Superior Court of New Jersey, Camden County Vicinage, and Judge Ronald J. Freeman** did hear and decide the motion on **March 5, 2012**.

169. **Mr. Reardon** did present this motion to the court under N.J.R.C. 3:22-2(a), (b) and (c) which holds that there is no tolling time to file a motion under these rules and **Mr. Reardon** did cite the controlling **State Supreme Court and the Third Circuit's case law affirming the State Supreme Court** decision that holds there is no time limit to file such a motion.

170. **Mr. Reardon** did raise the following issues in this motion:

A. The appearance of Justice has not been satisfied. (due to there being civil suits pending against **Judges Greene and Steinberg** against them at and before their involvement in **Mr. Reardon's criminal case.**) *Regina v O'Grady, 7 Cox C.C. 247 and The Queen v The Justices of Suffolk, 18 Q.B. 416, April 29, 1852.*

B. **Due Process of law** has been denied.

C. The proceedings and conviction of **Mr. Reardon** are void. and

D. There is not time limit to filing such motion.

171. **Mr. Reardon** did submit several exhibits with this motion which shows that these issues, as stated above, were never presented to any **State or Federal court** as it pertains to the guilt or innocence of **Mr. Reardon** as to his intent state of

77

mind and to his Due Process rights to a fair and impartial hearing and tribunal.

172. **Mr. Reardon** did point out that the state had failed to provide not even 1 **scintilla** of evidence that **Mr. Reardon** intended to use the alleged bomb against the person or property of another due to the following facts:

A. If **Mr. Reardon** had intended to use the bomb against the property or person of another, such as his ex-wife, ex-girl friend or an unknown Judge, and since he was attempting to commit suicide and expected to be dead by morning there was no way he could have used it.

B. **Mr. Reardon** further provided proof of his non criminal state of mind in that If **Mr. Reardon** was attempting to commit suicide and he believed he would be dead by morning, then there was no reason why he would not have mailed the bomb out to one of the alleged targets as if He was dead by morning there was no way to prosecute a corpse. and

C. The only evidence presented by the state was **Sgt. Dawson's claim** that there was only one reason the bomb could have been constructed as it was and that was to use it against the person or property of another. This is the imputing of an intent state of mind and relieved the state from producing evidence of the intent to use the bomb against the person or property of another.

173. **Judge Freeman** was made aware of the violation of **Mr. Reardon's** rights and how they were violated due to the fact That **The appearance of justice was not**

78

satisfied by **Judges Greene and Steinberg** due to the appearance of justice not being satisfied, and thus **Due Process** to a **fair and impartial hearing** was denied due to the following issues:

A. **Judge Steinberg** admitted to having approved more that **15,000 Warrants** in his career, that **Mr. Reardon** was the only person who had active suits against him at the time of his approving a search warrant for **Sgt Simon** of the **Runnemede Police Department** of which **Sgt. Simon and Judge Steinberg** were **parties to 3 active lawsuits against** them at the time of the warrant approval.

B. **Judge Steinberg**, while signifying and admitting to his expertise in such matters, **felt he had to consult a federal Judge** as to what to do about approving the search warrant.

C. **That Judge Steinberg**, about **3 months** after signing the search warrants in **June 1990**, he could not remember his involvement in **Mr. Reardon's criminal case.**

D. There was never any facts and circumstances proffered by **Sgt. Simon** to indicate the following. (1) What was and what was the basis that the Police believed there was a crime being committed or about to be committed by **Mr. Reardon** within his apartment and what that crime was; (2) What was the facts and basis that the police believed that there was some actual criminal implements within **Mr. Reardon's** apartment and what was that criminal implement; and (3) Why did they specifically seek out **Judge Steinberg** when there was probably at least a dozen

79

Judges to select from and Sgt. Simon of the Runnemede Police specifically sought out Judge Steinberg who was a defendant in 3 cases involving both him and Sgt. Simon.

E. Judge Steinberg failed to adequately explain why there were 3 search warrants in effect for the 6/29/90 search of Mr. Reardon's apartment. 1 signed at 3:15 pm, 1 signed at 9 pm and the one on file which was blank.

F. That Judge Greene, Steinberg, Ms. Karen Caplan and Andrew Rossaetti of the Camden County Prosecutor's office did deny the plaintiff of the following rights with no authority to do so.

i. Right to a jury of his peers at common law in New Jersey.

ii. Right to have a jury decide the law and facts.

iii. Right to be tried within 30 days of Mr. Reardon's arrest or indictment.

iv. To counsel who would aid Mr. Reardon as to the questions to be asked.

v. To the common law of England.

vi. Not to be tried and convicted unless by the plain and solemn averment of 2 honest and reputable witnesses to the overt act(s).

vii. The right to prefer and prosecute criminal charge against those who were charging me at the same time as my trial.

viii. To have Mr. Reardon's last will and testament admitted in his trial as exculpatory evidence as well as common law evidence.

80

ix. To Bar evidence to that went to prove an overt act not found in the indict -ment.

x. The Right a probable cause hearing at the time of arrest that required the state to prove the basis for the case and all evidence to the charges.

G. That Judge Greene did deny Mr. Reardon's right to bar the testimony of Sgt. Bruce Dawson of the State Police Bomb squad since Mr. Reardon requested to know his testimony prior to trial so he could prepare a defense to the states expert and Mr. Dawson was allowed to testify anyway.

H. That Judge Greene heard a motion for bail reduction and while reducing Mr. Reardon's bail to$3,500.00 it was not in line with the bail set for a woman, Ms. Marjorie Lorsbach, just months before my bail reduction, for the same offenses against Mr. Reardon, which was $5,000.00 @10% or $500.00. National Life Ins. Co. v U.S., 277 U.S. 508, 530.

I. That when Mr. Reardon was forced to go pro se due to the lack of due diligence on the part of the Public Defender's office Mr. Andrew Rossetti said:

(i) Let Mr. Reardon file any motion he wants and be heard on them.

(ii) Judge Greene did so order said same.

(iii)) That Judge Greene told Mr. Rossetti that he had till a certain time to file an objection to Mr. Reardon's motion.

(iv) Upon the return date of the motion, Mr. Rossetti had failed to file a brief

81

in opposition to **Mr. Reardon's motion** and the **State**, without **prior notice to Mr. Reardon** and at the blessing **Judge Greene**, was permitted to argue the motions. **Denial of due process of adequate notice.** This failure was not justified as to **Mr. Rossetti's Claims/Basis** as if he was allowing me to file any motions I wanted he should have replied to all motions he was referring to or to at least file a reply to the motion submitted as the time of the order. This shows intent to injure, conspiracy and intentional violations of my rights.

(v) **That Prosecutor Rossetti** stated the State was prepared to prosecute the case as of **October 1990.**

**J.** That **Judge Greene** did stay the trial of **Mr. Reardon 4 times** after he stated that would be no more delays in this case and all delays were at the request of the State in the gathering of new and more evidence to the **detriment/prejudice** of **Mr. Reardon.**

**K.** That **Judge Greene** stated on the record that **Mr. Reardon's ex-girlfriend** could testify at the trial but only in general terms and not go into detail of the charges **Ms. Carson filed against Mr. Reardon.** However, when **Judge Greene** saw where the testimony was going, that is to the detriment of **Mr. Reardon,** he allowed **Miss Carson to testify about the entire charges and incidents against the objection of Mr. Reardon.** As if this was not enough, he then did make a finding/ruling in front of the jury, and again to the detriment of **Mr. Reardon,** that he in fact found

82

Mr. Reardon had in fact harassed Ms. Carson.

L. That In September 1990, Judge Steinberg had a bail reduction hearing for this case and he denied such reduction. When he first came into the hearing he said "I seem to recall something about this case" when he had signed the Search Warrant only 3 months prior to the bail reduction hearing showing his memory was fallible. However, when there was a suppression hearing regarding the June 29, 1990 search warrant, Judge Greene, in violation of the law, and despite there being 16 months from the time of the 6/29/90 search warrant Judge Steinberg's incredible fallibility was not questioned by Judge Greene how someone who signed a search warrant 3 months prior to the bail hearing was a credible witness when he did not remember signing the 1st Search warrant or the 6/29/90 search warrant. Mr. Judge Greene further violate the law by using the Evidence at trial as part of the decision for sentencing. He used the same factors twice. Once at trial and then again at sentencing.

N. That Judge Greene did admit to knowing that I was attempting to commit suicide by CO asphyxiation, that Mr . Reardon expected to die, that if I were dead I could not possibly use the bomb against anyone and thus the 2nd degree charges were knowingly false or that if I intended to use the bomb and expected to be dead by morning why I did not mail the bomb as alleged since you can't prosecute a corpse.

83

O. That **Judge Greene** and the State did deny **Mr. Reardon** of his probable cause hearing to require the state to produce it's evidence to the charges.

P. That **Judges Steinberg and Greene did deny Mr. Reardon of his Due Process right to (a) a fair and impartial hearing; (b) To a fair and impartial tribun-al; (c) To adequate notice to the motions that Mr. Rossetti** approved of; and **(d) The right to a meaningful opportunity to be heard.**

174. That despite informing **Judge Freeman** of **Mr. Reardon's** constitutional right to a fair and impartial hearing and tribunal and the law on such, **Judge Free-men did willfully, deliberately, intentionally and knowingly deny and violate Mr. Reardon's Due Process rights** and legal rights to set aside his conviction under the rules cited above since the state failed to provide 1 **scintilla of evidence that Mr. Reardon** had a criminal intent state of mind as well as to **due process to a fair and impartial hearing and tribunal** and did deny **Mr. Reardon's 6**[th] **Amendment and 14**[th] **Amendment rights to Due Process** and **Mr. Reardon** has illegally and unconsti-tutionally been deprived of his rights to relief from his criminal conviction and **Judge Freeman** has failed to proffer any legal precedence to support his claims that (1) I am time barred from filing such a PCR motion, (2) the factual founda-tion the court relied on when it claimed that I have previously raised said issues of intent state of mind and denial of due process to a fair and impartial hearing and tribunal and (3) was intentionally, deliberately, wilfully and knowingly made

84

a ruling that is contrary to the Superior authority of the U.S. Constitution and Supreme court decision of *Scheuer v Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687 (1974) and has acted in his personal capacity to injure Mr. Reardon. See *Bouie v. City of Columbia, 378 US 347, 354,1964; Wright v. Georgia, 373 US 284, 291, 1963 and NAACP v. Alabama ex rel. Patterson, 357 US 449, 458,1958.*

175. Judge Freeman did wilfully, intentionally, deliberately and knowingly deprive Mr. Reardon of Due Process Rights to a fair and impartial hearing and tribunal.

176. Judge Freeman, while acting allegedly for the state, did intentionally make a ruling based upon his own personal bias and without any legal support in the State or Federal case laws contrary to the Superior Authority of the U.S. Constitution, has acted as a minister of his own prejudice, and in his personal capacity to deny Mr. Reardon of his right to relief from his unconstitutional decision in the state and has and continues to cause Mr. Reardon to be denied the right to keep and bear arms, and to sit on any kind of jury in any court.

177. Judge Freeman has acted in a matter contrary to the Superior Authority of the U.S. Constitution and has denied Mr. Reardon relief from his conviction when it is clearly in violation of Due Process to a fair and impartial hearing and tribunal due to the appearance of bias by Judges Greene and Steinberg as well as convicting him on charges that failed to produce 1 scintilla of evidence that Mr. Reardon had a state of mind to use the alleged parcel bomb as such.

178. Judge Freeman has an order that is contrary to the U.S. Constitution

and Mr. Reardon's rights thereunder, and done so willfully, deliberately, intentionally and knowingly and has failed to proffer any legal or factual basis for his order denying Mr. Reardon of his Due Process rights which has also violated my Due Process rights. *Bouie v. City of Columbia, 378 US 347,  354,1964; Wright v. Georgia,373 US 284, 291, 1963 and NAACP v. Alabama ex rel. Patterson, 357 US 449, 458, 1958.*

179. These willful, deliberate, intentional and knowing rulings are in violation of due process has resulted in Judge Freeman's loss of immunity, acting in his personal capacity and in violation of the U.S. Constitution.

180. Judge Freeman has allowed his personal bias against Mr. Reardon to control his unconstitutional decision without regard for the law, the constitution and Mr. Reardon's rights thereunder and has acted in his personal capacity to injure Mr. Reardon.

181. That Judge Freeman has deliberately, intentionally, willfully and knowingly acted contrary to the law and his duty to it and under it as follows.

A. *Pierson v Ray, 386 U.S. 547(1967): Ft. Notes @ 567:*

...The presence of malice and the intention to deprive a person of his civil rights is wholly incompatible with the judicial function. When a judge acts intentionally and knowingly to deprive a person of his constitutional rights he exercises no discretion or individual judgement, he acts no longer as a judge,  but as a "minister" of his own prejudices.

@561:

The position that Congress did not intend to change the common-law rule of judicial immunity ignores the fact that every member of Congress who spoke

to the issue assumed that the words of the statute meant what they said and that judges would be liable. Many members of Congress objected to the statute because it imposed *562\*562* liability on members of the judiciary.

Mr.Arthur of Kentucky opposed the measure because: "Hitherto . . . no judge or court has been held liable, civilly or criminally, for judicial acts......judicial acts . . . . Under the provisions of [section 1] every judge in the State court . . will enter upon and pursue the call of official duty with the  Sword of Demo-cles suspended over him . . . ." Cong. Globe, 42d Cong., 1st Sess., 365-366.

And Senator Thurman noted that:

"There have been two or three instances already under the civil rights bill of State judges being taken into the United States district court, sometimes upon indictment for the offense...of honestly and conscientiously deciding the law to be as they understood it to be. . . .

"Is [section 1] intended to perpetuate that? Is it intended to enlarge it? Is it intended to extend it so that no longer a judge sitting on the bench to decide causes can decide them free from any fear except that of impeachment, which never lies in the absence of corrupt motive? Is that to be extended, so that every judge of a State may be liable to be dragged before some Federal judge to vindicate his opinion and to be mulcted in damages if that Federal judge shall think the opinion was erroneous? That is the language of this bill."

Cong. Globe, 42d Cong., 1ˢᵗ Session. Mr. Lewis of Kentucky expressed the fear that:

"By the first section, in certain cases, the judge of a State court, though acting under oath of office, is made liable to a suit in the Federal court and subject to damages for his decision against a suitor. . . ." Cong. Globe, 42d Cong.1st Sess., 385.

87

Congressman Lawrence, 39th Congress, 1st Session, April 7, 1866, Congressional Globe @ 1837:

> If an officer shall intentionally deprive a citizen of a right, knowing him to be entitled to it, then he is guilty of willful wrong and deserving of punishment.

*Scheuer v Rhodes, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687 (1974):*

> ...when a state officer acts under a state law in a manner violative of the Federal Constitution, he comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subject *in his person* to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

C. *Boyd v U.S., 116 U.S. 616, 635:*

Though the proceeding in question is divested of many of the aggravating incidents of actual search and seizure, yet, as before said, it contains their substance and essence, and effects their substantial purpose. It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be obsta principiis.

88

D. *Caperton v. AT Massey Coal Co., Inc.,129 S. Ct. 2252, 2263, 2009.*

The judge's own inquiry into actual bias, then, is not one that the law can easily superintend or review, though actual bias, if disclosed, no doubt would be grounds for appropriate relief. In lieu of exclusive reliance on that personal inquiry, or on appellate review of the judge's determination respecting actual bias, *the Due Process Clause has been implemented by objective standards that do not require proof of actual bias.* See *Tumey,* 273 U.S., at 532, 47 S.Ct. 437; *Mayberry,* 400 U.S., at 465, 466, 91 S.Ct. 499; *Lavoie,* 475 U.S., at 825, 106 S.Ct. 1580.

E. *Thompson v Louisville, 362 U.S. 199, 206 and Ft.Note 10, 1960:*

The city correctly assumes here that if there is no support for these convictions in the record they are void as denials of due process.

F. *Boykin v Alabama, 395 U.S. 238, Ft. Note 5, 1969. This court said:*

voluntary and knowing, it has been obtained in violation of due process and is therefore void.

G. *Carey v. Piphus, 435 US 247, 266, 1978:*

Common-law courts traditionally have vindicated deprivations of certain "absolute" rights that are not shown to have caused actual injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages with out proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the princi-

ple that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights. Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, see *Boddie* v. *Connecticut*, 401 U. S. 371, 375 (1971);*Anti-Fascist Committee* v. *McGrath*, 341 U. S., at 171-172 (Frankfurter, J., concurring), we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury. We therefore hold that 267*267 if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners.

H. *Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401 (1958).*

The U.S. Supreme Court has stated that "No state legislator or executive or judicial officer can war against the Constitution without violating his under-taking to support it." "If the legislatures of the several states may, at will, annul the judgments of the courts of the United States, and destroy the rights acquired under those judgments, the constitution itself becomes a solemn mockery . . . ." *United States* v. *Peters*, 5 Cranch 115, 136. A Governor who asserts a *19*19* power to nullify a federal court order is similarly restrained. If he had such power, said Chief Justice Hughes, in 1932, also for a unanimous court, "it is manifest that the fiat of a state Governor, and not the Constituion of the United States, would be the supreme law of the land; that the restrictions of the Federal Constitution upon the exercise of state power would be but impotent phrases . . . ." *Sterling* v. *Constantin*, 287 U. S. 378, 397-398.

90

182.  Judge Freeman has intentionally, deliberately, wilfully and knowingly deprived Mr. Reardon of Due Process of Law to a fair and impartial hearing and tribunal, to the equal protections of the law, and has denied Mr. Reardon of relief from the illegal and unconstitutional conviction and has thus denied Mr. Reardon of his Constitutional rights and has injured Mr. Reardon in the full enjoyment of his right to keep and bear arms, to sit on any jury in any court—Federal or State, and as assumed the liability of all defendants in former Federal Case 92-2433 and now seeks the same redress and compensation sought in that case.

Mr. Reardon further hereby states, attests and affirms the following allegations as being attributed to Judge Freeman due to his intentional, deliberate, wilful and knowing violation of Mr. Reardon's rights and relief from said conviction and states as follows.

Bias/Prejudice and Fraud upon the court:

183. On 10/01/09 & 12/14/09 Mr. Reardon did file motions so challenging the jurisdiction of Judges Steinberg and Greene for the following reasons, Bias & denials of Due Process to a fair and impartial hearing and tribunal and lack of authority/jurisdiction to render certain judgments/decisions/orders, fraud and denial of Due Process and for giving legitimating effect to other orders/decisions of other judges. The motions were brought pursuant to Rules 3:22-1, 3:22-2, 3:22-3 and 3:22-4. The one rule that has no time limits as applied to Mr. Reardon's motion was Rule 3:22-2 (b), lack of jurisdiction in that Mr. Reardon did specifical-

91

ly make such a challenge.

A. **For loss of jurisdiction** to sit on the case or make any decisions on the case since **Mr. Reardon** sued them both prior to their involvement on **Mr. Reardon's** criminal matter for bias and thus loss of jurisdiction.

B. That **Judge Greene** Further lacked jurisdiction to issue certain orders in the case when said orders were **outside the scope of his authority based upon the common law of England and rights of the people thereto. And**

C. Judge Greene lacked jurisdiction/authority to give legitimating effect to the 2 search warrants signed by Judge Steinberg. For Judges Steinberg & Greene we have the following suits:

I. Federal Civil actions 85-0097 a general lawsuit was filed against the Camden County Court system for ongoing prejudice due to **Mr. Reardon's** ex-wife's connection with the Camden County courts.

II. Federal Civil Action 89-00223 was filed specifically charging **Judge Steinberg** with prejudice or lack of jurisdiction.

III. Federal Civil Action 89-01870 was filed specifically charging **Judge Steinberg** with prejudice or lack of jurisdiction.

IV. Federal Civil action 90-04551 was filed in general charging prejudice by the Camden County Court Judges.

V. Federal Civil action 91-05507 was filed specifically charging **Judges**

92

Steinberg and Greene with prejudice. Filed before the case went to trial.

184. There are 2 things that are clear here. 1st, the judges had an interest in the case as they were being sued for prejudice and that sparked an animus/bias to get Mr. Reardon. Statute & Case cited above. 2nd, that it is what the parties or what a reasonable person would believe as to the bias of the judge and not the judge. See Regina v O'Grady, 7 Cox C.C. 247, 1857; the Queen v the Justices of Suffolk, 18 Q.B. 416, 1852; the Queen v the Justices of London, 18 Q.B. 421, 1852; *U.S. v Kennedy 82 F.3d 244 - Court of Appeals, 3rd Circuit 2012 and In re Advisory Letter No. 7-11, 61 A. 3d 136 - NJ: Supreme Court 2013.*

In this case, **Judge Steinberg's** bias is demonstrated as follows.

A. Judge Steinberg had a score to settle with Mr. Reardon for the law suits he filed against him back in 1989. That this score/bias has reared its head as stated below. See Facts and Laws cited above under Facts and law for 1990-1992.

B. He allegedly signed 2 search warrants and had prior contact with **Mr. Reardon** in a legal proceeding in Federal Court around 416 days prior to signing the 2 warrants and Sgt. Simon was a defendant in those cases. See *M.P. v S.P.; State v Fariello Supras; Chandok v Chandoko, 968 A.2d 1197-1198, N.J. App., 2009 and* Hundred East Credit Corp. v Eric Shuster Corp., 212 N.J. Super. 356, 358, 1986.

C. He was unable to recall his prior actions involving **Mr. Reardon's** criminal charges 3 months after signing the 2 search warrants but somehow remembered his conduct on the 6/29/90 search warrant and its defects some 16 months after

93

this search warrant and all in the light of the fact that **Mr. Reardon** was the only one who had sued **Judge Steinberg prior to Mr. Reardon's criminal charges and** accepting and promoting the validity of the **6/21/90 search warrant** when it was defective. Did not comply with the law on appearance of justice.

**Judge Steinberg** could not testify as to what happened on **6/29/90** as he was barred from proffering any evidence to said application by way of **M.P. v S.P., 169** N.J. Super. 425, 434-435, 441-442, N.J. Appellate 1979.

D. There were 3 warrants in existence as to the 6/29/90 date, one signed at 9:00 p.m., 1 signed at 3:15 p.m. and the one on file that was blank.

E. He approved more than 15,000 warrants in his career to the time of Mr. Reardon's case and yet he did not comply with the legal requirements in the State and Federal level by accepting an affidavit by Sgt. Simon that was defective as follows. (1) The affidavit did not cite any basis as to what the criminal activity **Mr. Reardon** was or was about to engage in within his apartment; (2) it lacked any facts that would identify the criminal implements or basis to believe **Mr. Reardon** posses -sed any criminal implements or what they were; (3) it lacked any factual basis for the claim the implements would be in **Mr. Reardon's apartment;** (4) The exigency that supposedly existed was created by the state and (5) There was no probable cause facts to support these legal requirements.

F. That **Judge Steinberg** was granted the right to supplement  the record with the alleged facts that were never recorded contrary to *State v Fariello, 71 N.J. 552, 560, 1967 and the Court* held that the warrant had been issued without

probable cause,  observing that nothing * * * indicates that a warrant to search a private dwelling may not restupon mere affirmance of suspicion or belief without disclosure of supporting facts or circumstances. [*Id.* at 47, *54 S.Ct. at 13, 78 L.Ed. At 161.]*M.P. v S.P.169 N.J.Super. @434-435, 441-442 holding that all court proceedings must be recorded or transcribed for meaningful appellate review, in other words for due process of law.

G. That Judge Steinberg and Sgt. Simon of the Runnemede Police department were sued in 89-00223 and 89-01870 and Sgt. Simon, who knew that Judge Steinberg would be interested in Mr. Reardon's alleged activity, would give him a search warrant because of his bias, and Judge Steinberg did in fact sign such warrant with an affidavit that lacked a factual basis of (a) The alleged criminal activity Mr. Reardon was or was about to engage in within his apartment; (b) What criminal implements the police believed Mr. Reardon was in possession of within his apartment; (c) What was the belief that those implements would be in Mr. Reardon's apartment and (d) What exigency existed other than a "Mere Fear of what Mr. Reardon might have done". See *Whitely v Warden, 401 U.S. 560, 1971* which held as follows:

> An insufficient affidavit cannot be rehabilitated by testimony after issuance concerning information possessed by the affiant but not disclosed to the magistrate.The affidavit also lacked any showing of exigency based on the presearch facts listed in the affidavit of Sgt. Simon. As such the court has said. Exigency has historically been considered a justification for dispensing with a warrant, but not an exception to probable cause. *Vale v. Louisiana, 399 U.S. 30, 34 (1970).In Ornelas v. United States, for example,* the Court described probable cause as requiring "facts sufficient to warrant a man of reasonable prudence in the belief that evidence of a crime *will* be found" in the place to be searched. *517 U.S. 690, 696 (1996) (emphasis added); see*

95

*also Gates, 462 U.S. at 238.*

*Illinois v. McArthur, 531 U.S. 326, 337 (2001):*

> "In determining what is probable cause [w]e are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit for the belief that the law was being violated on the premises to be searched; and if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant."

> Also, the courts stated in one such case Chancey Lynn BAIRD <u>v</u>. STATE of Arkansas, ___ S.W.3d ___ , Supreme Court of Arkansas Opinion delivered May 27, 2004. 4. Search & seizure -- warrantless searches --requirements. -- To enter a residence or a private dwelling without a search warrant, two things must be present: probable cause and exigent circumstances. 5. Search & seizure -- warrantless searches -- Probable cause. -- Probable cause is determined by applying a totality-of-the-circumstances test; it exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution In the belief that an offense has been or is being committed.

Also,

> "Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant." *Agnello v. United States, supra,* at <u>269 U. S. 33</u>. That basic rule "has never been questioned in this Court." *Stoner v. California, supra,* at <u>376 U. S. 487</u> n. 5.

> Law enforcement officers must obtain a warrant before  searching a person's property, unless the search "'falls  within one of the recognized exceptions to the warrant requirement.'" State v. DeLuca, 168 N.J. 626, 631 (2001) (quoting State v. Cooke, 163 N.J. 657, 664 (2000)). The need for the police to obtain a warrant may be excused if both exigent circumstances and probable cause are extant. See also State v. Smith, 129 N.J. Super. 430, 435 (App. Div.) (circumstances are exigent when they "preclude expenditure of the time necessary to obtain a warrant because of a probability that the suspect or the object of the search will disappear, or both"), certif. denied, 66 N.J. 327 (1974).

> Further, Courts have said that The government's own action or inaction

96

cannot be the likely cause of an exigent circumstance. *See United States v. Vega, 221 F.3d 789, 798 (5th Cir. 2000); United States v. Munoz-Guerra, 788 F.2d 295, 5th Cir. 1986.* In *Munoz-Guerra*, the government agents had observed illegal drugs in the defendant's condominium shortly before they approached his patio door. *788.2d at 297.* When the defendant answered the door it was basically a"foregone conclusion" <u>that the agents would make a warrantless entry based on the fear that the defendant might try to destroy the evidence or retrieve a gun.</u>

*See id. at 298.*

The Fifth Circuit held that where the defendant was not aware of the police surveillance, the mere presence of firearms or destructible contraband did not justify the police in dispensing with the warrant requirement and conducting a warrant-less search of defendant's home. *Id.* In essence, the government agents created the exigency by approaching the defendant's residence "under circumstances that were likely to necessitate a protective search of the home." *Vega, 221 F.3d at 799* (analyzing facts in *Munoz-Guerra*).

In Mr. Reardon's case, the police only feared some type of criminal implement *Might* be in the apartment, they had no factual or other basis to know this. They created their own exigency and had no believable probable cause facts.

This is to be construed as to an ulterior motive of the police and as a demon-stration by Judge Steinberg to get even with Mr. Reardon for suing him, and as to his bias and the police also had a motive to get Mr. Reardon as he had sued them and had suits pending against them at the time of the warrantless search of Mr. Reardon's apartment.

H. That Judge Steinberg did consult an Unknown federal judge before he signed the 1ˢᵗ warrant on 6/21/90 and was apparently told that he would be immun-ized and protected by the court should Mr. Reardon sue him and he was so protect-ed even though the judge had no jurisdiction to sign the order and this explains why

97

the Federal Court was so quick to grant the Judges immunity for fear of being expos

-ed as part of the conspiracy against **Mr. Reardon.**

I. The State court of appeals held in *State v Fariello,  133 N.J. Super. 114, 117* that (i) That an affidavit must be submitted with all search warrants but the one submitted by **Sgt. Simon** was defective in pre-search facts or basis to support probable cause for a search of any kind and (ii) The failure to provide the basis for probable cause makes any search warrant and  evidence inadmissable and **Judge Steinberg** did sign such defective warrants and has and continues to maintain their validity contrary to the law and **Judge Greene** also has and continues to hold the premise that such warrants are still lawful and not contrary to the law.

J. That there was no pre-search facts/affidavit submitted by **Sgt. Simon** on 6/ 21/90 and the plaintiff was again denied due process to a fair and impartial hearing as there is no way to challenge the validity of the Police and Judge's actions and conduct without knowledge of the facts prior to the search and what pre-search facts that were known and stated By **Sgt. Simon** was known on 6/20/90 and they failed to seek a search warrant then if probable cause in fact existed as claimed on 6/21/90.

K. The Police failed to identify the basis for the alleged criminal conduct of **Mr. Reardon,** or the alleged criminal implement(s) to be searched for or the basis to believe it would be in **Mr. Reardon's apartment and Judge Steinberg** signed such warrant willfully and intentionally knowing it was defective and knowing he was barred from so doing due to the fact he was required to recuse himself from such signing and he failed to so do.

98

L. That **Judge Steinberg** was required to recuse himself from signing the warrants and heand refused to do so and **Sgt.s Simon and Dawson** specifically sought out **Judge Steinberg** when they knew he had a beef against **Mr. Reardon** and they were granted search warrants that were defective.

M. **Judge Steinberg** failed to comply with the statutes, case law, rules of court and Cannons ofJudicial Conduct. **Mr. Reardon** does not believe he obtained a fair and impartial hearing before **Judge Steinberg** regarding the 2 search warrants on **6/21/90 and 6/29/90** and for bail in **September 1990** as he failed to comply with all the processes for recusal, Bail and probable Cause and since it is **Mr. Reardon,** the party, who is to be judge of this criteria and **Mr. Reardon** does not believe that **Judges Steinberg and Greene were impartial.**

The above facts give rise to the fact that **Judge Steinberg** <u>lacked authority/</u> jurisdiction to Sign a search warrant that had no exigency to it since the alleged exigence was eliminated by the warrantless search, and removal of **Mr. Reardon,** by the **Runnemede Police** and for which there was no impediment for **Judge Steinberg** to assign or direct **Sgt. Simon** to another judge for appearance purposes. (Intent to injure)

N. While the **Judge Defendants** normally have subject matter jurisdiction both over the Criminal Proceedings of the state and **Mr. Reardon,** Jurisdiction is also limited by the law that would strip a judge of the power to decide an issue, inquiry or impose a sentence, it is these things that Stripped these Judges of their jurisdiction and subjects them to the damages they inflicted upon the plaintiff and

99

for which this court is bound to obey. See Bouvier's Law Dicrtionary, 3rd Revision, 8th Edition, 1984 Re-print,Page 1760; Long v. Shorebank Development Corp., 182 F.3d 548 (C.A. 7 Ill. 1999);  People v. Sales, 551 N.E.2d 1359 (Ill.App. 2 Dist.1990) ; Davidson Chevrolet, Inc. v. City and County of Denver, 330 P.2d 1116, certiorari denied 79 S.Ct. 609, 359 U.S. 926, 3 L.Ed. 2d 629 (Colo. 1958); State ex rel.Turner v. Briggs, 971 P.2d 581 (Wash. App. Div. 1999); B & C Investments, Inc. v. F & M Nat. Bank & Trust, 903 P.2d 339 (Okla. App. Div. 3, 1995) Due to the Appearance of Bias of the State Judge Dedfendants, they all were required to recuse themselves and thus they lacked or lost, at minimum, personal jurisdiction over the plaintiff.

185. Sgt. Simon and the Runnemede and Bellmawr Police officers had an ulterior motive and animus against Mr. Reardon since he sued them prior to his having bought black powder and at the time of the search there were suits pending against them by me and they agreed to illegally search my apartment to get back at me for the lawsuits he had pending against them and to gain the advantage of getting those lawsuits dismissed since Mr. Reardon would be in jail and not know how to prosecute and defend the 2 lawsuits and thus to deny me of access to the courts and to seek damages for injuries that they inflicted on the plaintiff in the other 2 lawsuits.

186. As for the appearance of justice and recusal by the Judge, Mr. Reardon does hereby site the following law:

Since Thompson v Whitman Supra and Freytag Supra all hold that a void order cannot be made valid, and where the 2 search warrants are void on their

100

face, **Judge Greene** and the Appeals court lacked jurisdiction to legitimate the void search warrants. Thus, the entire trial of **Mr. Reardon** was premised upon **frauds on the court** to claim their actions were legal when they were not, on frauds and void orders and who has to commit the **frauds**. That is a judge claimed jurisdiction to sanction **2 void search warrants** and has done and continues to hold that they are valid when they are not. **See Brady v Maryland, 373 U.S. 83, 86, 1963.**

186. **Judge Greene's** actions are void in that he showed bias against **Mr. Reardon as follows.**

A. He was sued by me prior to his involvement in **Mr. Reardon's** criminal case as the trial Judge and in a warrant probable cause hearing for the **6/21/90** search warrant he claimed probable cause existed for such warrant when the police failed to proffer any factual basis as to what (i) crime **Mr. Reardon** was or was about to engage in in his apartment; (ii) what criminal implements were the Police searching for; and (iii) What was the factual basis that lead them to believe they would be in **Mr. Reardon's apartment** which all go to prove probable cause and what was the actual exigency that could not wait for a warrant to be procured that wasn't created by the Police themselves, and all when the testimony of the police and other evidence—news articles, showed (a) That the police were searching for the black powder; (b) That the black powder was legally purchased and possessed by Mr.Reardon and they knew this; (c) That a letter of **Mr. Reardon's** behavior was known by the Police before his purchase of the black powder and the police knew this and that they knew **Mr. Reardon** was doing nothing wrong; (d) that the case of

*Rice v Wolfe, 386 F.Supp. 185* found that with similar facts known by the police in *Rice Supra,* there was no probable cause to search the person's house; (e) The Police "Feared" what **Mr. Reardon** *might* have done with the black powder which is not probable cause or suspicion of criminal activity; (f) that they knew of a letter of my intent to commit suicide prior to the purchase of the black powder; (g) They knew all this on **6/19 and 6/20** prior to **Mr. Reardon** attempting to commit suicide and did not seek a search warrant then. (h) they knew that **Mr. Reardon** had no firearms of any type to warrant the purchase and possession of the black powder and The police charged **Mr. Reardon** with possession of an explosive device with the intent to use it against the person or property of another while knowing **Mr. Reardon** was attempting to commit suicide and believed he would not be alive to allegedly use the bomb against the person or property of another.

B. **Judge Greene** allowed **Judge Steinberg** and his proven fallible memory to reconstruct the record of the search warrant of **6/29/90** contrary to *State v Fariello Supra* and U.S. Supreme Court findings that (a) an affidavit has to be filed with any warrant application and the one submitted was defective; (b) That it has to list the pre-search facts substantiating probable cause; (c) that probable cause must still exist when there are alleged "**exigent circumstances**" to conduct a warrantless search of a dwelling; and (d) that the police and **Judge Steinberg** failed to provide proof of all of these. *See State v Fariello Supra @ 560* &@117.

C. That The prosecutor's office claimed it was ready to go to trial in **Oct. 1990** and all evidence was in and then when new evidence came in that was contrary to

102

Mr. Reardon's right to due process he allowed this new evidence in, on several occasions the court allowed this new evidence in spite of the claim by by the state it was ready to go to trial in Oct. 1990. The state gained a tactical advantage due to this.

D. That **Judge Greene** set a firm trial date on 4 separate dates for trial and though he said in this case there would be no more postponements he granted the state an extension all 4 times when new incriminating evidence was gathered by the state.

E. That **Mr. Reardon** objected to the testimony of **Mr. Dawson** on the grounds that he requested to know all the testimony of all experts to be testifying, that the state denied **Mr. Reardon** of this information, that **Mr. Reardon** was unable to produce his letter to this request in court that day and on the next day he did try to present this letter and renew his objection and **Judge Greene** did deny **Mr. Reardon's** objections.

F. **Judge Greene** also lost jurisdiction by giving **Judge Steinberg's** warrants legitimating effect contrary to *Freytag Supra.* and the law on void judgments.

G. That **Judge Greene** allowed the defective search warrant applications by **Sgt.s Simon and Dawson,** as set out in **Steinberg's** bias statements above, to stand.

H. That **Judge Greene** Denied **Mr. Reardon** of all his common law rights as set out in this complaint. Including the right to have his last will and testament admitted into evidence as exculpatory evidence at common law.

I. That in the **6/21/90 search warrant of Sgt. Simon,** the state was allowed to enter the warrant into evidence without a pre-search warrant affidavit as to prob-

103

able cause prior to obtaining the search warrant.

J. That in the furtherance of the conspiracy **Judge Greene** denied **Mr. Reardon** of the following guaranteed rights of all criminal defendants. They are: (1) Right to a jury of his peers; see *Ex Parte Virginia, 100 U.S. 339, 369;* (2) Right to a jury to decide the law and the facts; (3) Right to be tried within 30 days from the date of his arrest and when that failed within 30 days of the date of his indictment and the trial did not occur for 18 months after his arrest; (4) To adequate counsel that would aid Mr. Reardon not only in the law but on what types of questions to ask of witnesses; (5) To the Common Law of England; (6) To not be tried and convicted on less than the plain and solemn averment of at least 2 honest and reputable witnesses to the overt acts and to have his conviction set aside for failure to provide such evidence; (7) The right to prefer counter criminal charges against the police officers and others who committed common law crimes against Mr. Reardon to be tried simultaneously with his trial this was denied by Sheriff Simon of Camden County.

K. That **Andrew Rossetti**, the original prosecutor, said that as of **October 1990** he was prepared to go to trial and that **Judge Greene** did allow the new prosecutor numerous delays in the trial to continue to gather more evidence against **Mr. Reardon.**

L. That **Judge Greene** did state that **Miss Carson** could testify to her having problems with **Mr. Reardon** but she could not testify as to what those problems were and then when **Miss Carson** testified **Judge Greene** allowed all the facts to

come into the case and then even ruled in front of the jury that he found **Mr. Rear-don** guilty of harassment and all to prejudice **Mr. Reardon** in front of the jury.

M. That the New Jersey Statutes for sentencing set out a list of aggravating and mitigating factors that must be juxtaposed with each other so that if an aggravating factor was present or lacking the mitigating factor would be lacking or present. **Judge Greene** did not so apply the sentencing guidelines objectively but rather applied them subjectively.

N. **Judge Greene** did apply factors weighed in the criminal trial and at sentencing together contrary to New Jersey law. That is **Mr. Reardon** was found to harass **Miss Carson** and he used this at trial as a character trait and action and then for sentencing as well.

O. **Mr. Reardon**'s crimes were 2nd **degree** and carried a maximum of **10 years**. **Mr. Reardon** was a law abiding citizen for **40 years** before committing the alleged crimes and given this factor he should have gotten no more that **5 years flat** and for which he would have had to spend a maximum of **14 months in jail** before he was eligible for parole and **Judge Greene** did deliberately apply the aggravating and mitigating factors subjectively so as to give **Mr. Reardon a parole ineligibility of 3 years** due to the fact that **Mr. Reardon** was held in jail for over **18 months** pend-ing the trial and to give me a flat sentence would automatically grant **Mr. Reardon** a right to sue for damages and for which **Judge Greene** did wilfully take it upon himself to protect the state defendants, Police and others from that happening.

P. **Judge Greene** never placed into the record the alleged factual basis for

105

the warrantless search of **Mr. Reardon's** apartment on 6/21/90 but found probable

cause existed anyway.

    Q. **Judge Greene** failed to comply with the statutes, case law, rules of court

and Cannons of Judicial Conduct. **Mr. Reardon** does not believe he obtained a fair

and impartial hearing before **Judge Greene** regarding the 2 search warrants on 6/

21/90 and  6/29/90 and trial in front of **Judge Greene** as he failed to comply with

all the processes for recusal and since it is **Mr. Reardon**, the party, who is to be

judge of this criteria and **Mr. Reardon** does not believe that **Judge Greene** was

impartial.

    R. The state deprived **Mr. Reardon** of his lawful right to a probable cause

hearing prior to his indictment and lengthy pretrial incarceration he is entitled to.

This deprived **Mr. Reardon** of the right to know the basis, facts, laws and evidence/

proofs the state had against **Mr. Reardon** prior to his indictment in **August 1990**,

some **60 days** after his arrest. This is contrary to the case of **Gerstein v Pugh, 420**

**U.S. 103 (1975)** which found that...

> Accordingly, we hold that the Fourth Amendment requires a judicial deter-
> mination of probable cause as a prerequisite to extended restraint of liberty
> following arrest. This result has historical support in the common law that
> has guided interpretation of the Fourth Amendment. *See Carroll v. United*
> *States*, <u>67 U. S.132</u>, <u>267 U. S. 149</u> (1925). At common law, it was customary
> , if not obligatory, for an arrested person to be brought before a justice of
> the peace shortly after arrest. 2 M. Hale, Pleas of the Crown 77, 81, 95, 121
> (1736); 2 W. Hawkins, Pleas of the Crown 116-117 (4th ed. 1762). *See also*
> *Kurtz v. Moffitt,* <u>115 U. S.</u>  487, <u>115 U. S. 498</u>-499 (1885). [<u>Footnote 14</u>]
> The justice of the peace Page 420 U. S. 115 would "examine" the prisoner
> and the witnesses to determine whether there was reason to believe the
> prisoner had committed a crime. If there was, the suspect would be committ
> -ed to jail or bailed pending trial. If not, he would be discharged from cus-
> tody. 1 M. Hale, *supra,* at 583-586; W. Hawkins, *supra* at 116-119; 1 J.

106

Stephen, History of the Criminal Law of England 233 (1883). [Footnote 15] The initial determination of probable cause also could be reviewed by higher courts on a writ of habeas corpus.2 W. Hawkins, *supra* at 112-115; 1 J. Stephen, *supra* at 243; *see Ex parte Bollman,* 4 Cranch at 8 U. S. 97-101. This practice furnished the model for criminal procedure in America immediately following the adoption of the Page 420 U. S. 116 Fourth Amendment , *see Ex parte Bollman, supra;* [Footnote 16] @ 7 U. S.317-320 (DOUGLAS, J., dissenting). [Footnote 17] In this case, there was no probable cause hearing ever had, not even after indictment. [See also, Introduction to the laws of England, Page 69...These customs..now become a permanent rule, which it is not in the breast of any subsequent judge to alter or vary from according to his private sentiment; he being sworn to determine, not according to his own private judgment, but according to the known laws and customs of the land; not delegated to produce a new law, but to maintain and express the old one. Yet this rule admits of exceptions, where the former determination is most evidently contrary to reason.

Page 86...

...Statutes are either declaratory of the common law or remedial of some defect therein.

Page 89...

...Where the common law & Statutes differ, the common law gives place the statute.

Blackstone's Commentaries, Book 1, Chapter 1, Of the Absolute rights of

Individuals:

Page 124...

...principal grounds of the fundamental laws of England. afterwards by the statute called confirmatio cartarum, whereby, the great charter--Magna Carta, is directed to be allowed as the common law; all judgment contrary to it are declared void

Book 4, Chapter 22...

Page 293...

...The justice, before whom such prisoner is brought is bound immediately to examine the circumstance of the crime alleged; and to this end by statute

107

2 & 3 Ph. & M. c.10 he is to take in writing the examination of such prisoner, and the information of those who bring him, which Mr. Lambard observes was the 1st warrant given for the examination of a felon in the English law. For at the common law, nemo tenobatur prodere Seipsum; and his fault was not to be wrong out of himself, but rather to be discovered by other means, and other men. If upon this inquiry it manifestly appears, either that the suspicion entertained of the prisoner was wholly groundless, in such cases only it is lawful totally to discharge him. Otherwise he must either be committed to prison, or give bail.

Chisholm v Georgia, 2 U.S. (Dall)  419: Page 2 U.S. 435]

was adopted, or at the time the Judicial Act was passed. Since that time, an Act of Assembly for such a purpose has been passed in Georgia. But that surely could have no influence in the construction of an act of the Legislature of the United States passed before.The only principles of law, then, that can be regarded are those common to all the States. I know of none such which can affect this case but those that are derived from what is properly termed "the common law," a law which I presume is the groundwork of the laws in every State in the Union, and which I consider, so far as it is applicable to the peculiar circumstances of the country, and where no special act of legislation controls it, to be in force in each State as it existed in England (unaltered by any statute) at the time of the first settlement of the country. The statutes of England that are in force in America differ perhaps in all the States, and therefore it is probable the common law in each is in some respects different. But it is certain that, in regard to any Common Law Principle which can influence the question before us, no alteration has been made by any statute which could occasion the least material difference, or have any partial effect. No other part of the common law of England, it appears to me, can have any reference to this subject but that part of it which prescribes remedies against the Crown.

S. Judge Greene Further showed bias/prejudice against Mr. Reardon by deny

108

ing him of his common law/constitutional rights as follows, when he had no authority to so deny them.

187. (A) That the State never gave **Mr. Reardon** his probable cause hearing to test the state's case contrary to the law. See *United States v Cruikshank, 92 U.S. 542, 556-557, 1876 and Black-stone's Commentaries, Book 4, Chapter 22, Page 293,* and this did deprive **Mr. Reardon** of due process and the equal protections of the law for such and did deprive **Mr. Reardon to (a) reasonable Bail**; (b) To know what the state's evidence was for the alleged charges; (c) To Due Process to a fair and impartial hearing/trial and tribunal and (d) to notice and a meaningful opportunity to be heard.

(B) The plaintiff was indicted on the mere parroting of the Statutes contrary to the well settled law and it did not **transcend to specifics** contrary to the well settled law on specifics in the indictement. *Gerstein v Pugh, 420 U.S. 103, 113-116, 1975 nd Blackstone's Commentaries, Book 4, Chapter 27, Pages 351-352.*

(C) The Plaintiff was thus denied of Notice/Adequate Notice, in violation of Due Process of Law, to the specifics of the charges prior to trial. See *In re Gault, 387 U.S. 1, 25, 29 and 53, 1967; H.E.S. v J.E.S., 175 N.J. 309, 2003; Thompson v Louisville, 362 U.S. 199, 1960; Boykin v Alabama, 395 U.S. 238, 1969; Earle v McVeigh, 91 U.S.* 503; United Student Aid Funds, Inc. v Espinosa, 130 S.Ct. 1367, 1376-1377, 2010 and J.F. v B.K., 308 N.J. Super. 387, 391-392, N.J. App. 1998.

(D)  The plaintiff was in fact tried, in violation of his rights to a fair trial by the state allowing the Defendants **Rossetti and Caplan,** to introduce into evidence alleged specific facts that were not contained in the indictment. See *Blackstone's Commentaries, Book 4, Chapter 27, Pages 351-352.*

(E) The plaintiff was denied of his Due Process rights to adequate notice of the specifics of the charges all the way from 6/20/90 to 11/1/91. See *In re Gault, 387 U.S. 1, 25, 29 and 53, 1967 and HES v. JCS, 815 A. 2d 405, 412, NJ: Supreme Court 2003 [this case cites Nicoletta v. North Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 162, N.J. Supreme Court, 1978.].*

188. The **plaintiff** was denied the following rights as established as follows. As to the common law of England being the rights of the People and inviolable I draw the court's attention to: *Schick v U.S. 195 U.S. @ 69-71 and District of Columbia v Heller*, 128 S.Ct. 2783, 2798, 2008, the court stated.....

> **Blackstone's Commentaries are accepted as the most satisfactory exposition of the Common Law of England. At the time of the adoption of the Federal Constitution it had been published about 20 years, and it has been said that more copies of the work had been sold in this country than in England, so undoubtedly the framers of the Constitution were familiar with it.**

*Solemn v Helm, 463 U.S. 277, 286:*

> **English principle of proportionality. Indeed, one of the consistent themes of the era was that Americans had all the rights of English subjects. *See, e.g.,* I J. Continental Cong. 83 (W. Ford ed.1904) (Address to the People of Great Britain, Sept. 5, 1774) ("we claim all the benefits secured to the subject by**

110

the English constitution"); 1 American Archives 700 (4th series 1837) (Georgia Resolutions, Aug. 10, 1774) ("his Majesty's subjects in *America* . . .are entitled to the same rights, privileges, and immunities with their fellow subjects in *Great Britain*"). Thus our Bill of Rights was designed in part to ensure that these rights were preserved. *Joseph Story's Constitutional Commentaries, Page 65 (1833).*

The common law was in place in all the states sending delegates to the Constitutional Convention, with most states expressly adopting the common law in their original post-independence Constitutions, some adopting it by early statute and in the few states ""where not explicitly adopted, it is yet considered as the law of the land, subject to modifications and express legislative repeal."" James Kent, William Hardcastle Browne. Commentaries on American Law, pg. 212 (1894). Although the common law in any state was not necessarily identical to the common law of England due to differences in local precedents and statutes, these differences were minor and it is clear hat the common law in place in the states followed the fundamental maxims and rules of the English common law. See *Chisholm v Georgia, 2 U.S. (2 Wall) at 435 and Gerstein v Pugh, 420 U.S. 103(1975).*1776 New Jersey Constitution: XXII. *That the common law of England, as well as so much of the statut law, as have been heretofore practised in this Colony, shall still remain in force,* until they shall be altered by a future law of the Legislature; such parts only excepted, as are repugnant to the rights and privileges contained in this Charter; and that the inestimable right of trial by jury shall remain confirmed as a part of the law of this Colony, without repeal, forever.

1947 New Jersey Constitution: Art. I: Clause 21:

This enumeration of rights and privileges shall not be construed to impair or deny others retained by the people.

Thus, the legislature can only change the constitution to improve upon it and

not take away any rights, all of the above rights under the common law are still

ours. As to the court not having jurisdiction to rule contrary to the common law I

draw the courts attention to: Blackstone's Commentaries, Introduction, Page

89:

> Where the common law & Statutes differ, the common law gives place to the statute.
>
> *U.S. v Jepson, @ 90 F.Supp. 980,* the New Jersey precedent, which held...
>
> The ordinary or statute law cannot supplant the organic or constitutional law.

Blackstone's Commentaries, Book 1, Chapter 1, page 124 and Book 4, Chapter 27,

page 349 on the validity of Magna Charta:

> Any judgment contrary to the great Charter, Magna Charta/common law of England, is void.

Blackstone's Commentaries, as follows: Introduction, Page 69: see above cite.

> As to the Judges losing jurisdiction/recusal in Mr. Reardon's case the law is

as follows. See  Article VI, par. 2 and Amendment 14 of the U.S. Constitution.

> In *U.S. v Poludniak, 657 F. 2d 948, Cert. Den. 102 S.Ct. 1431:*
>
> If the average man on the street, knowing all the facts and circumstances of the case, would harbor Doubts as to the judge's impartiality, the judge must recuse himself.

28 U.S.C. 455...

> (a) Any justice, judge, or magistrate judge of the United States shall disqual
> -ify himself in any proceeding in which his impartiality might reasonably be questioned.

112

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning any person or

personal knowledge of disputed evidentiary facts concerning the proceeding;

*State v Utsch, 184 N.J. Super. 575...*

Nor does the circumstances of the initial judge's disqualification produce double jeopardy consequences or indicate a mandatory "new hearing" characterization of the continued proceeding. Clearly, a trial judge not only as the right, but, moreover, has the obligation to recuse himself on his own motion if he is satisfied that there is good cause for believing that his not doing so "might preclude a fair and unbiased hearing and judgment, or... might reasonably lead counsel or the parties to believe so." see Rule 1:12-1 (f). The unwarranted personal attack made by defendant's on the municipal court judge at the initial hearing, particularly a lay judge, justified his decision to recuse himself.

N.J.S.A. 2A:15-49. What constitutes:

No Judge of any court shall sit on the trial of or arguments of any matter in controversy in a cause pending in his court, when he

d. Is interested in the event of such action.

e. ...Or which might lead counsel or parties to have doubts about the Judges impartiality.Cannons of Judicial Conduct:

Canon 1. A Judge Should Uphold the Integrity and Independence of the Judiciary:

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved The provisions of this code should be construed and applied to further that objective.

Canon 2. A Judge Should Avoid Impropriety and the Appearance of Impro-

113

priety in All Activities.

A. A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

Commentary: Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety and must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on personal conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly. *Offutt @13-15.*

Cannon 3 C. Disqualification. (see R. 1:12-1):

(1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer or has personal knowledge of disputed evidentiary facts concerning the proceeding;

New Jersey Rules of Court:

Rule 1:12-1. Cause for Disqualification; On the Court's Motion:
The judge of any court shall be disqualified on the court's own motion and shall not sit in any matter, if the judge

(e) is interested in the event of the action; or

(f) when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so.

Bouvier's Law Dictionary, 3rd Revision, 8th Edition, 1984 reprint, Page 1760,

jurisdiction:

114

*The right of a judge to pronounce a sentence of the law, on a case or issue before him, acquired through due process of law. In re Ferguson, 9 Johns. (N.Y.) 239; Hopkins v Comm., 3 Metc. (Mass.) 46. See Also, Regina v O'Grady Supra, the Queen v The Justices of Suffolk Supra; U.S. v.Kennedy, 682 F. 3d 244, 253, 257-258 - Court of Appeals, 3rd Circuit 2012 and In re Advisory Letter No. 7-11, 61 A. 3d 136, 137-144 - NJ: Supreme Court 2013.*

189. Motive for the conduct of **Sgt. Dawson and the other police officers** in the search of my apartment and later testimony to conduct themselves contrary to the law and my rights is that they found a way to get back at **Mr. Reardon** for the lawsuits he had pending against them and to cause the cases against them to be dismissed and to avoid liability under those cases.

190. They conducted an illegal search and seizure in my apartment and property to drum up fictitious crimes against **Mr. Reardon** and to have him convict-ed upon perjured and false testimony and evidence. That **the 2 search warrants** failed to prove a basis for the crime I was engaged or about to engage in in my apartment, what the criminal implements that they were searching for, what was the basis for the belief they would be in my apartment and failed to identify the exigent circumstances that could not wait for a warrant.

191. They also sought out Judge Steinberg to approve the warrants knowing full well that he was gunning for me because of the **2 lawsuits pending** against him and the Police officers that conducted the illegal search, and that they deliberately sought this judge out due to his known prejudice against me even though there was probably a dozen other judges they could have sought out and did not so do. That **Sgt. Simon** did commit perjury on the witness stand as to the alleged legality

115

of their search warrant and for which they knew that **Judge Greene** had agreed to find probable cause and aid them in their efforts to convict and jail me on fictitious crimes when they failed to place in the record the necessary facts to prove probable cause for the illegal search.

192. That **Prosecutor's Rossetti and Caplan** did agree to prosecute the false charges against **Mr. Reardon** by agreeing to go along with the claim of probable cause to search when there was no proof of such ever proven in any affidavit or testimony. That they agreed to go along with the charade of the criminal case to injure me and put me in jail and to punish me for my past lawsuits against the judges named in this Lawsuit and **Mr. Rossetti** at a bail reduction hearing **commit -ted perjury and fraud upon the court** by claiming that more than 1 live bomb was found at plaintiff's apartment when not even 1 such bomb was found.

193. That all of the police defendants went along with each other to illegally break and enter the **plaintiff's apartment** knowing full well there was not probable cause for such, did go along with the conspiracy to **"get Mr. Reardon"** for his actions in the courts pending against them, cases 89-00223 & -1870, and they did agree to seize property of the plaintiff illegally and did agree to go along with the fraudulent/ bogus charges so that they could punish **Mr. Reardon** for his past civil suits against them and did knowingly go along with the false/fraudulent claims that there was a live bomb found in plaintiff's apartment when no such thing was in fact found and this was proven by the pictures they took of allegedly disarming the bomb. See for example *Mitchum v Foster, 407 U.S. 225, 1972 and Peirson v Ray, 386 U.S. 547,*

116

*567.*

194. That the defendant Civil and Criminal Clerk's of the court did deny **Mr. Reardon** of his rights of access to the courts by refusing to file and docket numerous complaints, motions and Habeas Corpus petitions and failed to carry out their legal duty under the law and in accordance with that duty/responsibility which denied this pro se plaintiff of access to the State Courts and his Unwritten Constitutional rights as to filing motions, filing habeas corpus, filing lawsuits and from filing count -er criminal charges against the other Police, Judge and Prosecutor defendants and they failed to proffer any reason why they failed to docket and file such matters by the plaintiff. That they did agree to refuse to file such matters so that the state and state officials could try, convict and sentence **Mr. Reardon** on the bogus/fraudulent charges and to injure him in his person, property & rights and all without concern for their duty and obligation to and under the law and to go along with the known conspiracy to "get **Mr. Reardon**".

195. The plaintiff did then file a 2nd PCR motion challenging the plaintiff's conviction for **(a) Denial of Due Process to fair and impartial hearings, tribunals and trial** due to the failure of **Judges Greene and Steinberg's** to recuse themselves in the plaintiff's criminal proceedings between 1990-1992; **and (b)** That based upon the pure facts of the criminal trial there could have been no intent to use the alleg-ed, **parcel, bomb** against the person or property of another given the plaintiff was

117

in the process of committing suicide and thus a dead person would be (i) Unable to mail the bomb if he believed he would be dead since it wasn't mailed prior or (ii) Their could have been no intent to so mail the alleged bomb if the plaintiff believed he would be dead by morning and if he had the intent to use it he would have had no reason to not mail it.

196. The Appellate court defendants did then rely on the Judge's false order and never looked at the actual proofs submitted by the plaintiff and they did deprive the **plaintiff of a Fair and Impartial hearing and tribunal** and that they did so **intentionally, deliberately, wilfully and knowingly** in violation of the law and the **plaintiff's rights.**

197. **Judge Pugliese** committed **Official Misconduct** of office by conspiring with the **Camden County Prosecutors** office to delay the **plaintiff's 2009 PCR motion** to the point that the new Rules would take affect so as to **deliberately, wilfully, intentionally and knowingly** for the purpose of injuring the party by ensuring the **plaintiff** could not file a 2nd **PCR motion due** to the changes that took place on 2/1/2010, as they saw the rules. They did act under color of **State law, Art. VI, Section 2, Paragraph 3 of the 1947 N.J. Constitution** and the **related State statutes referring to Rule 3:22-4** changes without right to do and did deny the plaintiff of **Due Process** of law to a fair and impartial hearing and the right to be heard under the 1st and 14th **Amendments** of the U.S. Constitution the courts have

failed to address these deprivations of my rights. See *Bouie v. City of Columbia, 378 US 347, 354, 1964; Wright v. Georgia, 373 US 284, 291,1963 and NAACP v. Alabama ex rel. Patterson, 357 US 449, 458,1958.*

198. The **March 3, 2012 PCR** in the State was not addressed on its merits or lack of merits. It was dismissed as being untimely and the **Rooker-Feldman Doctrine** does not apply to matters that were not decided on its merits. I cannot be said to be heard and have my day in court if the court is going to say I have no standing to bring the matter to the court.

199. I did not discover the law on **State Procedures and Due Process till** 1/30/15 and thus the fraud of failure to disclose relevant case law by the defendants.

200. The **defendants** did in fact railroad the **plaintiff** due to having sued them and other Judges prior to and during the criminal trial of the **plaintiff** in order to teach him a lesson for suing pro se in court against Judges and other state officials.

201. The **defendants** did turn the **plaintiff's criminal trial** into a "**Kangaroo court/trial due** to **all the violations** of my **constitutional rights** they committed against the **plaintiff** and their **willful violations** of the plaintiff's **rights** to **teach him a lesson.**

202. The **defendants** have done to this **plaintiff** the very things that **Congress** sought to stop by the passage of the "Civil Rights Act". See *Mitchum v Foster @*

*241.*

203. The Defendant, **Frank Soltis, did deliberately, wilfully, intentionally, willingly and knowingly** fail to instruct the Grand Jury as to the proof of 2nd **Degree Crimes as follows**: 1. He did only instruct the Jury on 3rd **Degree Crimes** requirements and not 2nd degree requirements; 2. He did tell the Grand Jury all the alleged crimes were 3rd **degree**, when they were both 2nd and 3rd **Degree Crimes**; 3. The indictment was thus defective as the Indictment I received there was no 2nd **Degree crimes** and I was tried, Found guilty an sentenced on 2nd **degree crimes.** He failed to so bring such defects to the attention of the **Judge and Prosecutor.**

204. I was denied by the Camden County Sheriff my 1st **Amendment Right** to Petition the court by failing to see to it that I was granted and permitted to file Criminal Charges against the Police and Judges and my 5th and 14th **Amendment Rights to fair and impartial hearings, tribunals** and the **Equal Protections** of the Law.

205. The Criminal and Civil Docketing clerks did deny my 1st **Amendment**

206. **Rights** to access to the Courts and to petition for redress of grievance and to a fair and impartial officials.

I. **Mandates and Rights violated are:**

U.S. v Wong Kim Ark, 169 U.S. 649, 654, 1898 as Follows:

> *In this as in other respects, it MUST be interpreted in the light of the*
> *common law, the principles and history of which were familiarly known to*

120

_**the framers of the Constitution.**_

The Defendants failed to consider the Common Law its decision thus violating my 1st Amendment right to a meaningful opportunity to be heard and my 5th Amendment Right to a Fair Hearing and Tribunal and the Equal Protections of the Law.

This court also held in Solem v Helm, 463 U.S. 277, 286:

> _Blackstone's commentaries are accepted as the most satisfactory exposition of the common law of England._

Payne v. Tennessee, 501 US 808, 855,1991:A2-40:

> "[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court _Must_ be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be"

The Defendants failed to comply with the U.S. Supreme Court decisions on the topic/issues raised in this Lawsuit.

Joseph Story's Commentaries, Pages 140 and 309 say respectively:

> The Common Law is our Birthright and inheritance;

The defendants failed to comply with their _Duty_ to comply with this 9th Amendment Right to the Common Law. Boyd v U.S., 116 U.S. 616, 635, 1886 and in so doing they denied me of my 1st, 4th, 5th, 6th, 8th, 9th and 14th Amendment Rights.

> The Rights protected under the Constitution cannot be transferred or surrendered by any Means.

121

The defendants in effect caused my Rights to be surrendered by their their decisions, opinions, judgments, orders and proceedings.

Blackstone has thus held as follows:

Introduction to the Laws of England, Page 69:

> These customs..now become a permanent rule, which it is not in the breast of any subsequent judge to alter or vary from according to his private sentiment; he being sworn to determine, not according to his own private judgment, but according to the known laws and customs of the land; not delegated to produce a new law, but to maintain and express the old one. Yet this rule admits of exceptions, where the former determination is most evidently contrary to reason.

> This passage as to its wording **Mandates** that the **Common Law** must be com

-plied with and is my right to the benefit of this Common Law cite.

Page 89:

> Where the Statute Law and Common law differs the common Law gives place to the Statute Law.

> This Common Law **Mandate** makes it clear that the **Common Law trumps**

the statute law and the defendants failed to comply with this **Mandate denying** me

of the **Benefit of the Common Law** without any discretion to do so. I was denied the

benefit of the **Common Law.**

Blackstone's Commentaries, Introduction to the Laws of England, Page 92:

> For the freedom of our constitution will not permit, that in criminal cases a power should be lodged in any judge, to construe the law otherwise than according to the letter.

> The defendant **Judge Greene** failed to apply N.J.S.A. 2C:58-7(a) and (c) in

122

accordance with its wording in that this statute granted me the right to make and keep an explosive device as long as I show it to the Police within **15 days** and for which I was denied this Right.

This Statute also placed a limit on the Police when it comes to seeking to employ this Statute and their rights thereunder in that they had to wait **15 days to** search for the device under a proper search warrant for which not even a judge can immnize the police if they violate this Statute and **Judge Greene** let the Police so violate. Butz v Economou @489-490, 506-507.

Book 1, Chapter 9, Page 342:

> But, on the other hand, any *malicious or tyrannical abuse* of their office is sure to be severely punished; and *all persons who recover a verdict against a justice, for any wilful or malicious injury, are entitled to double costs.*

Given that I had Lawsuits pending relating to **Judges Steinberg and Greene** before them becoming Biased, Malicious or tyrannical and wilful **Judge Greene did** rule that the wording of this Statute is a he sees it, but not as the citizen/me sees it he has stripped me of my right of immunity under the mentioned Statute as to immunity and against my **4th Amendment Right against unlawful arrest and** Search under the 4th Amendment.

Book 4, Chapter 22, Page 293:

> ...The justice, before whom such prisoner is brought is bound immediately to examine the circumstance of the crime alleged; and to this end by statute 2 & 3 Ph. & M. c.10 che is to take in writing the examination of such prisoner, and the information of those who bring him, which Mr. Lambard

123

observes was the 1st warrant given for the examination of a felon in the English law. For at the common law, nemo tenobatur prodere Seipsum; and his fault was not to be wrong out of himself, but rather to be discovered by other means, and other men. If upon this inquiry it manifestly appears, either that the suspicion entertained of the prisoner was wholly groundless, in such cases only it is lawful totally to discharge him. Otherwise he must either be committed to prison, or give bail.

This Mandate required the Judge and prosecutor to, upon arrest, the court and for which the State is required to bring the accused immediately to the court and disclose the alleged facts and evidence to the charges and I never received my right to a probable cause hearing and alleged evidence and proof till November 1991.

Blackstone's Commentaries, Book 4, Chapter 23, Page 302:

The offence itself *must* also be set forth with clearness and certainty.

The indictment was severely deficient in being clear. The defects to said same are: The State indicted me on the mere wording of the Statute which is insufficient since it did not State what the unlawful purpose of the device was. They failed to put forth the purpose and I was not apprised of it's purpose as to the State prior to the trial.

The defects in the indictment were (a) there was not 2 witnesses to the alleged unlawful purpose; (b) the grand jury was told that all charges were 3rd degree and were only instructed for 3rd degree crimes, not 2nd and 3rd degree; (c) the defective indictment was not superceded to correct this blatant error/defect and I was tri-

124

ed and **found guilty and sentenced on 2nd and 3rd Degree crimes.**

**Blackstone's Commentaries, Book 4, Chapter 23, Page 308:**

> **at all events, to pay costs, unless the information shall be tried within a year after issue joined.**

The plaintiff was arrested on **6/21/90**, the date that the issue was joined. I

was not tried within **1 year and I had to pay attorney fees.**

**Book 4, Chapter 27, Page 346:**

> **and therefore it is there usual to try all  felons immediately, or soon after, their arraignment.**

I was **arrested on June 21, 1990 and was not tried for 18 months** from this

date and not tried for **17 Months from the date or my arraingment.**

This is not immediately or soon after the issue was joined.

**Page 349-350...**

> **...Attorney aught to aid in what questions to ask, or ask them himself,  as well with the law.**

Standby Counsel failed to carry out his *duty* to instruct me as to the types of

questions to ask witnesses or ask them himself. Said counsel also failed to serve the

subpoenas for my witnesses he agreed to serve and failed to assist me on the Law.

**Blackstone's Commentaries, Book 3, Chapter 23, Pages 371-372; Book 4, Chapter**

**27:**

The Defendants are Liable for Double or Treble Costs which I was denied of

by this court.

**Pages 346, 351:**

> For, as they do not allow a less number than two witnesses to be plena probatio, they call the testimony of one, though never so clear and positive, semi-plena probatio only, *on which no sentence can be founded.*

**1676 Concessions and Agreements of West, New Jersey: CHAP. XX:**

> That in all matters and causes, *civil and criminal, proof is to be made by the solemn and plain averment of at least two honest and reputable persons*

The defendants violated this mandate in that the indictment did not have 2 witnesses before the Grand Jury as to all alleged crimes contrary to the **Common Law and Historical Law/Rights** and only 1 witness to the 2nd Degree Crimes which barred Judge Greene from enforcing his sentence upon me. See Allstate Insurance Co. Of N.J. v Lajara, 117 A 3d 1221, 1226-1233, 2015.

**Page 351-352:**

> ...no evidence shall be admitted to prove any overt act not expressly laid in the (page 352) Indictment.

The defendants were allowed to present evidence as to the indictment and to the issue of the unlawful purpose for which I was denied of. The indictment failed to state what the bomb was to be used for and if it was to be used against a person who the person was for which this info was never provided me till the trial.

**Ch. 27,  Page 353...**

> ...That whatsoever could be brought in favor of the subject should be admitted to be heard. State v Long, 801 A.2d 221,231-232, NJ Supreme Court 2002.

126

There are 2 items of evidence that the court denied my right to bring into the proceedings. This evidence was:

A. My Last will and testament was blocked from coming in when it had issues that were relevant to the charges I was being tried for. The indictment only stated It was possessed for an unlawful purpose and at trial the purpose was finally implied it was to use the device against either my ex-wife or my ex-girlfriend.

My Last will and testament named both of these alleged targets in my will for which the Jury should have been permitted to consider this evidence as exculpatory.

My will also lent authority and proof I was suicidal and not homicidal but to let that evidence in would have tanked the State's charges and opening themselves up for a Civil Suit

B. I began counseling with a therapist as to my wanting to know why man so desperately clings to life as I was severely depressed and suicidal. This Therapist, Mr. Keating, could have proven on the record that I was suicidal, and not homicidal, and would have tanked the State's Charges and claims of my being homicidal. State v Utsch, 184 N.J. Super.,175,181,1982, N.J. Appellate; State v Tucker, 264 N.J. Super. 549, 555, N.J. App. 1993:

Court Must recuse itself on its own motion.

This case creates a Mandate on the part of the Judge that he/she must com-

127

ply with and if doesn't he denies me of my 1st Amendment Right to be meaningfully heard and my 5th Amendment Right to a Fair Hearing, Fair Tribunal and the Equal Protections of the law which void said proceedings before the particular Judge. Both Judges Steinberg and Greene were required to rscuse themseleves on their own motion and they failed to do so.

2. Failure to recuse causes loss of Subject Matter Jurisdiction. The Queen v The Justices of Suffolk, 18 Q.B. 416, 1852; The Queen v The Justices of London, 18 Q.B. 421, 1852; Regina v O'rady, 7 Cox C.C. 247, 1857.

These cases held that while the party was given notice and the right to be heard and was in fact before the proper Court that the Judge Should have recused himself from the proceedings and since he didn't do that his decision was invalid/ void. Since void proceedings can only be so for the following reasons: Lack of notice; Lack of the right to be heard; Lack of personal jurisdiction or Lack of Subject Matt -er jurisdiction and since the defect is not to the 1st 3 reasons, that only leaves loss of Subject Matter Jurisdiction. Judges Steinberg and Greene were required to re- cuse themselves per the specifics of the proceedings before them, they Lost Subject Matter Jurisdiction making them liable for Legal Relief.

3. Other  reasons why state Judges lost jurisdiction or for which their deci- sions, orders and opinions are void are:

Pantich v. Pantich,770 A. 2d 1237, 1239,N.J. App. Div .2001:

128

[if a] judge fails to acknowledge a disqualifying predisposition or circum-
stance an Appellate court *Must* order recusal no matter what the source.
[The PCR and Appellate court judges failed to comply with their own Man-
date.]

**Mr. Reardon** presented claims that required **Judges Steinberg and Greene**
should have recused themselves but didn't, they **Lost, Lacked or Usurped** their jur-
isdiction and would be liable and all other Judges acted as **Trespasser's in the Law**
and failed to comply with their own Mandates in **Denike v Cupo and State v Gioe.**
I was denied my rights under the **1st, 5th and 14th Amendments. Liteky v U.S., 510**
**U.S. 540, 544-545, 562-563, 1993.** The law is clear the Court decisions go from
1981, 1986, 1993 and 2009. There has been no reversal of said Law.

**Judges Steinberg and Greene** knew they were required to recuse themselves
and the failed and refused to do so. They denied me of my **1st, 5th and 14th Amend-**
ment Rights:

**Zeller v Rankin, 101 S.Ct. 2020, 1981:**

when a Judge Lacks Jurisdiction and he knows it, he Loses Judicial Immun
-ity.

**Judges Steinberg and Greene** knew they **Lacked Jurisdiction** and failed to
recuse themselves, for which I so alleged. They denied me of my **1st, 5th and 14th**
**Amendment Rights.**

**Denike v Cupo, 196 N.J. 502, 507, 2008, Supreme Court:**

a court has a *Duty* to avoid even the appearance of partiality.

129

With all the act that **Judges Steinberg and Greene** that were and are contrary to the law and their actions regarding how the judges treated the state and the plaintiff, they certainly did not appear to be neutral.

**Neder v United States, 527 US 1, 8, 1999:**

**Void proceedings based on refusal to recuse *requires* reversal.**

**State v Gioe, 950 A.2d 930, 936, N.J. App. 2008:**

**failure to recuse voids judgments and orders.**

The trial of the plaintiff cannot be said to be proper and just and their failure to recuse themselves should have caused the other defendants to become Trespasser's in the Law and denied this plaintiff of his rights and their decisions are void.

**United Student Aid Fund v Espinosa, 130 S.Ct. 1367, 1377, 2010:**

> A void judgment is a legal nullity. See Black's Law Dictionary 1822 (3d ed.1933); see also id., at 1709 (9th ed.2009). Although the term "void" describes a result, rather than the conditions that render a judgment unenforceable, it suffices to say that a void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final.

**Caperton v Massey Coal CO., 129 S.Ct. 2252, 2254-2252, 2259-2260 and 2263, 2009:**

**Failure to recuse violates Due Process.**

1. I had active lawsuits against Judges Greene and Steinberg prior to their becoming involved in my criminal Proceedings. These lawsuits were filed in 1985, 1988, 1989, 1990 and 1991.A292-293. The court said in Chandock v Chandock,

130

968 A.2d 1197-1198,NJ:Appellate Div. 2009 and  Hundred East Credit Corp. v

Eric Schuster Corp., 212 N.J. Super.350, 358, 1986:A74, St. 8:

> Prior litigation between Judge and party before him requires the Judge to recuse himself.

> These 2 Judges were mandated to recuse themselves and they failed to do

that and violated all the rights and procedures set out in this Lawsuit.

> II. Intentional Denial of rights:

Mr. Lawrence, Congressional Globe @1837:

> If a Judge intentionally denies a citizen of his rights he is guilty of wilful wrong and deserving of punishment.

Pierson v Ray, 386 U.S. 547, 562, 567-568, Ft. Nt. [] 1967:

> When a judge acts intentionally and knowingly to deprive a person of his constitutional rights he exercises no discretion  or individual judgment; he Acts no longer as a judge, but as a " minister" of his own prejudices.

> III. Basis For Liability:

Bogan v Scott-Harris, 523 U.S. 44,, 51,52,1998:

> Respondent's heavy reliance on our decision in Amy v Supervisors, 11 Wall. 136  (1871), is  Misguided for this very reason. In that case, *we  held that local legislators could be held liable for violating a court order to levy a tax sufficient to pay a judgment, but only because the court order had created a mini-sterial duty. Id., at 138 ("The rule is well settled, that where the law requires*

52:

> *absolutely a ministerial act to be done by a public officer, and he neglects or refuses to do such act, he may be compelled to respond in damages to the extent of the injury arising from his conduct"). The treatises cited by respon*

131

*dent confirm that this distinction between legislative and ministerial duties was dispositive of the right to absolute immunity. See, e.g., Cooley 377 (stat -ing that local legislators may be held liable only for their "ministerial" duti -es); Mechem § 647 (same).*

Antoine v Byers & Anderson, Inc., 508 U.S. 429, 435, 1993:

> Indeed, *we have recently held that judges are not entitled to absolute immunity when acting in their administrative capacity. Forrester v. White, 484 U. S. 219, 229 (1988). 436 (absolute immunity from state law tort actions available to executive officials only when their conduct is discretion- ary)*

In re Charter Communications Inc., 343 F.3d 721,784,8[th] Cir. 2005:

> Ministerial acts have long been recognized as non-judicial by the Supreme Court. See, e.g., Custiss v. Georgetown & Alexandria Turnpike Co., 6 Cranch 233, 10 U.S. 233, 236, 3 L.Ed. 209 (1810).

> This court's decision that all judges and courts must comply with mandates

is a ministerial act as follows.

Definition of Must:

> Generally refers to a mandatory requirement; imposes a duty or grants a right which is mandatory or imperative.

> "Mandatory" refers to something that is required, and not optional or sub- ject to discretion.

Definition of Tyrant:

> 1. The chief magistrate of the state, whether legitimate or otherwise, who violates the constitution to act arbitrarily contrary to justice. Toull. tit. prel .n. 32.

> 2. The term tyrant and usurper, are sometimes used as synonymous, because usurpers are almost always tyrants; usurpation is itself a tyrannic- al act.....

132

`

3. This term is sometimes applied to persons in authority who violate the laws and act arbitrarily towards others. Vide Despotism.

Definition or Requires:

Implies something mandatory, not something permitted by agreement.....

Definition of Shall:

As used in statutes and similar instruments, this word is generally imperative or mandatory

Legal Definition of Duty:

A legal obligation that entails mandatory conduct or performance.

a legal obligation, the breach of which can result in liability.

Legal Definition of Obligation:

The popular meaning of the term "obligation" is a duty to do or not to do something.

207. The Defendants Poice officers, knowing that when I claim to have my rights to be denied used the courts to seek relief from said violations. However, the mere speculation of the Police turned from this pattern of conduct to a belief that I had the intent, now, to attack those who I believed violated my rights based on the conclusion that since I was trying to commit suicide that somehow this implied or established conduct that was now to be physically directed the injure those who violated my rights. The basis for Probable Cause was now premised on this mere specu -lation or conclusion for which the Police claimed gave them probable cause to search my apartment for the legally bought and possessed Black Powder.

133

208. Despite the fact that all search warrants require an affidavit to be submitted with a Search Warrant, D.Sgt. Bruce Dawson apparently never submitted one since I was not provided a copy of any such affidavit.

209. The sentence imposed by Judge Greene was illegal since it failed to comply with the following Law/Rights:

A. Justice Joseph Story's Constitutional Commentaries:

Page 140:

The Common Law is our Birth Right and Inheritance.

Page 309:

Rights secured by the Constitution cannot be surrendered or transferred by any means.

B. U.S. v Wong Kim Ark, 169 U.S. 649,654, 1898:

The courts must take into consideration the Common Law when making their decisions.

C. Allstate Insurance Company of New Jersey v Lajara, 117 A.3d 1221, 1226-1233, N.J. Supreme Court 2015:

The people are entitled to the Common Law of England. See also U.S. v Jeepson, 90 F.Supp. @988-989.

D. State v Lund, 119 N.J. 235, 52, 1992:

The State owes allegiance and respect to the Supreme Court's finding as to federal laws and constitution.

E. Blackstone's Commentaries, Introduction to the Laws of England, Page 69:

134

It is not in the Breast of the judge to not comply with and uphold the Common Law as it is not their right to make new law but to maintain and expound the old law.

F. Since the Common Law is not listed in the First 7 Articles or First 8 Amendments it is reserved under the 9th and/or 10th Amendments.

G. Article 6, ,¶ 2, Any State Statute or Constitutional Amendment contrary to the Federal Statutes and Constitution notwithstanding. All State Statutes and Constitutional Articles or Amendments must be in accord with the Federal Statutes and Constitution.

H. Blackstone's Commentaries, Book 3, Chapter 23, Pages 371-372; Book 4, Chapter 27, Pages 346, 351: 5th, 6th and 14th Amendments:

For, as they do not allow a less number than two witnesses to be plena probatio, they call the testimony of one, though never so clear and positive, semi-plena probatio only, *on which no sentence can be founded.*

1676 Concessions and Agreements of West, New Jersey: CHAP. XX:

That in all matters and causes, civil and criminal. proof is to be made by the solemn and plain averment of at least two honest and reputable persons.

I. Payne v Tennessee, 501 U.S. 801, 855, 1991:

Courts must comply with the decisions of the U.S. Supreme Court.

### Count 1

The plaintiff incorporates all statements as though recited herein.

The plaintiff seeks to have the jury to hear this case and all evidence to establish the rights and relationship of the plaintiff and the defendants under state rights

135

as per rules 38 & 39 of the Federal Rules of Civil Practice and as per his State Constitutional rights to have this and to determine if said rights were violated. Such rights to be settled are:

A. The right to die/commit suicide and how it affects jurisdiction over the pending matter in any court directly or indirectly.

B. If one has the rights to a trial by jury of ones peers.

C. If the jury has the right to determine the law, the facts, enter its verdict and render its judgment.

D. Whether any person has the right to plead the case for another person at that person's request in any court, and in any case for any case.

E. Whether the refusal to answer the Plaintiff's petitions in fact amounts to a violation of rights and to deny the rights sought to be addressed.

F. Whether the defendants conduct was incon-sistent with their lawful duty to the law and people and thus whether the people's rights to have competent, dilegent, forthright and honest agents has been violated or denied and whether, as such, they have therefore engaged in criminal conduct for which they may be brought to answer for.

G. Whether the defendant's conduct toward the plaintiff is or was criminal for which they had no discretion to do.

H. Whether the plaintiff has the right to file counter criminal charges

136

against the defendants, either in whole or in part.

I. Whether the plaintiff has the right to prosecute and try, simultaneously, the charges in #H above with the charges that were pending against the plaintiff under indictment No. 2331-8-90.

J. Whether the plaintiff has the right to file a MIXT complaint involving civil, criminal, equitable, at law, at common law, for real or personal property claims at one time.

K. Whether the plaintiff has the right to present the above types of complaints as part of a complete defense and thus to his rights of "due process" thereof.

L. Whether the Federal Criteria for speedy trial under 18 U.S.C. § 3161 is one in the same time period for speedy trial within the state under the State Constitution. And that said Statute is binding on the State Courts as per Art. 6, ¶ 2 for which the Courts have and continue to deny the People the Right to a speedy trial in accordance with said Statute since the State does not have a speedy trial Statute, Custom, Practice, Procedure or Usage for such. I was denied this right.

M. Whether the State and the police violated the plaintiff's rights to be protected from search and seizure under N.J.S.A. 2C:58-7(a) and (c) and the criteria enunciated in the case of State v Novembrino, 105 N.J. 95 for private dwelling searches, and whether in this State any warrantless search of a private

137

home may be conducted.

N. Whether due process of any type was violated. (i.e. arraignment, bail proceedings, right to be heard, speedy trial, fair and impartial hearing, etc.)

O. Whether counsel was adequate in this case and whether a Public Defense system can so provide such counsel.

P. Whether the 8th Amendment bail and treatment issues were violated.

Q. Whether the equal protections of the law was denied.

R. Whether the state agents have engaged in an implied written and/or oral contract, by oath, law and position; whether this contract requires specific performance by way of Art. 7, Sec. 1-1, N.J.S.A. 2A:13-10; 2A:158A-1, et seq.; 41-1,-2 or -3; 2C: 30-2, 2c:5-1 AND 18 N.J. @590-591; and Whether the conduct of the defendants amounts to a breach of this implied contract, duty and specific perform -ance; and whether they may be sued for such a breach civilly for injuries they cause as a result.

S. Whether the plaintiff's character was slandered and libeled and thereby deemed violated.

T. Whether the police are responsible and liable for the loss of plaintiff's automobile.

U. Whether the plaintiff has the right to recover by suit as an action in Debt, the equivalent imposition of criminal fines for the violation of such laws

138

against a person and thereby causing him/her injury as a form of compensatory damages.

V. Whether the plaintiff was falsely charged in this matter and imprisoned.

W. Whether the plaintiff could be prosecuted and/or indicted on less than the plain and solemn averment of at least 2 honest and reputable witnesses.

X. Whether the plaintiff was maliciously prosecuted.

Y. Whether the defendants were properly trained and/or supervised.

Z. Whether there were frauds, deceit, negligence, wilful, wanton, callous, reckless or "deliberately indifferent" actions and conduct by the defendants.

AA. Whether state officials can be sued for liability, not withstanding the claim of Absolute Immunity when they State Statutes and Case law holds that judges are stripped of there authority, discretion, power or right, or in other words they lose *personal and/or Subject matter jurisdiction over the case, issues, causes, actions of person. See for example Peretz v U.S. Supra.*

AB. The State Court's are failing to comply with Mandates upon them that would make them Liable and an order should be entered requiring the State Judges to comply with these Mandates. U.S. v Wong Kim Ark, 169 U.S. 649, 654, 1989; Payne v Tennessee, 501 U.S. 808, 855, 1991; Blackstone's Commentaries, Introduction to the Laws of England, Pages 69, 89, 92, Book 1, Chapter 9, Page 342; Mr. Lawrence, 39th Congress, 1st Session, April 7, 1866, Congressional Globe

@1837 and Bogan v Scortt-Harris, 523 U.S. 44, 51-52, 1997; Pierson v Ray,  124 86 U.S. 547, 562, 567-568, Ft. Nt. [] 1967 making them liable for not complying with these Mandates.

Other Mandates violated by the State Judges are: See pages 12-14 above; Blackstone's Commentaries, Book 4, Chapter 22, Page 293;  Chapter 23, Page 302; Chapter 23, Page 308; Chapter 27, Page 346; 18 U.S.C. § 3161 and Article VI, ¶ 2 of the U.S. Constitution; Chapter 27, Pages 349-350;  Book 3, Chapter 23, Pages 371-372; Book 4, Chapter 27, Pages 346, 351; 1676 Concessions and Agreements of West, New Jersey: CHAP. XX; Book 4, Chapter 27, Page 351-353.

Any other issues or rights they ought by right to determine according to the law, State and Federal, as to any issue not mention above but which may be related to this case directly or indirectly and may come up during the course of these proceedings. and

Any other relief deemed appropriate by the jury or court or which may be needed from time to time.

### Count 2

Plaintiff incorporates the allegations of the complaint as though recited

140

herein and asks for the following relief.

For violation of 18 U.S.C. 241 & 242; N.J.S.A.2C:13-1(a), -1(b)(1); 2C:13-3,

for violation of the sate codes by way of 2C:2-6(a), (B)(1), (3), (4) & (C)(1)(c); C:5-1

(a)(1)-(3) and (c) and 2C:5-2(a)(1) & (2) for each of the following defendants; Mr.s

Leason, Pfieffer,L. Simon, Muller, Diano, Mondelli, Romano, Dougherty, Farmer

Walshe, the Runnemede Ambulance crew, whose names are presently unknown,

The hospital staff of O.L. of L.H. whose names are presently unknown and O.L. of

L.H.

The plaintiff seeks compensatory, punitive and exemplary damages against

the named defendants in the amount of $10,000,000.00 for each class of damages

to be collected jointly and severally from the defendants.

Treble Damages as a result of the criminal conduct carried out in violation

of the N.J. RICO statutes, 41:1-1, et seq, by this RICO enterprise and by way of

the concerted efforts and associations of  the other parties with these enterprises.

Any other relief deemed appropriate by the Jury or Judge or which may be

needed from time to time.

Count 3

141

Plaintiff incorporates the allegations of this complaint as though recited here in and seeks the following relief.

compensatory, punitive and exemplary damages in the amount of $240,000,000.00 to be collected jointly and severally from the following defendants and as determined as follows.

For violation of N.J.S.A. 2C:15-1; 2C:18-2(a)(1) & (b)(2); 2C: 18-3; 2C:20-2(a) and (b)(2); 2C:20-3(a), -4(a)-(c) and -5 and for violations of the code by way of the 2C sections listed on lines 7 & 8 of count 2 for Mr. Leason, Pfieffer, Romano, Diano, Dougherty, Muller, Mondelli, L.Simon and Dawson and the unknown persons from the Alcohol, Tobacco and Firearms agency the members of the U.S. Postal Service inspectors division and the Sheriff's Office Personnel, and then treble damages for RICO violations of the laws. And

Any other relief deemed appropriate by the jury or court or which may be needed from time to time.

## Count 4

Plaintiff incorporates the allegations of this complaint into this count as though recited here in. Compensatory, punitive and exemplary damages in the amount of $2,560,000.00 to be collected jointly and severally from the defendants as set out as follows: For violation of N.J.S.A. 2C:21-3(b) & -4(a) and for violation

142

of the codes listed in lines 7 & 8 of Count 2, from the following defendants. Mr. Leason, Pfeiffer, Doudgherty, Romano, Diano, Mondelli. L.Simon, Muller, Dawson, Farmer, Walshe. And

Any other relief deemed appropriate by the jury or court or which may be needed from time to time.

## Count 5

The plaintiff incorporates the allegations of this complaint into this count as though recited herein.

Compensatory, punitive and exemplary damages in the amount of $43,560,000.00 for violation of N.J.S.A. 2C:28-1; -2(a)-(c); -3(a), (b)(1) & (c); -4 (a)-(c) & (b)(2); and -7(a)-(c) and for violation of the statutes listed on lines 7 & 8 of count 2 from the following defendants: Leason, Pfeiffer, Mondelli, Dougherty, Diano, L.Simon, Muller, Romano, Dawson, Farmer,Walshe, the John/Jane Doe Internal affairs officer of the Camden County Jail, The civil & criminal Docket clerks and Mr.Keating & then treble damages for RICO violations. And

Any other relief deemed appropriate by the jury or court or which may be needed from time to time.

## Count 6

The plaintiff incorporates the allegations of this complaint into this count as though recited herein.

Compensatory, punitive and exemplary damages in the amount of

143

$23,760,000.00 for violation of N.J.S.A. 2C:29-1; -3(a)(2), (4), (4), (7) and (b)(1), and for violation of the statutes listed on lines 7 & 8 of count 2 from the following defendants: Leason, Pfeiffer, Mondelli, Dougherty, Diano, L.Simon, Muller, Dawson, Romano, Farmer, Walshe, W. Simon, the John/Jane Doe Internal affairs officer of the Camden County Jail, the civil & criminal Docket clerks and Mr. Keating & then treble damages for RICO violations. And

Any other relief deemed appropriate by the jury or court or which may be needed from time to time.

## Count 7

The plaintiff incorporates the allegations of this complaint into this count as though recited herein.

Compensatory, punitive and exemplary damages in the amount of $6,072,000,000.00 for violation of N.J.S.A. 2C:29-1; -3(a)(2), (4), (5), (7) and (b)(1), and for violation of the statutes listed on lines 7 & 8 of count 2 from all 30 + defend -ants who hold official positions in the State, and then treble damages for RICO violations. And

Any other relief deemed appropriate by the jury or court or which may be needed from time to time.

## Count 8

The plaintiff incorporates the allegations of this complaint into this count as though recited herein.

144

Compensatory, punitive and exemplary damages in the amount of $10,000,000.00 to be collected jointly and severally from all defendants for loss of $1,675,903.13 in pay and related benefits and for the loss of damages in 3 separate lawsuits that were dismissed as a result of an inability to prosecute/defend them and any other damages and then treble damages for RICO violations. And

Any other relief deemed appropriate by the jury or court or which may be needed from time to time.

### Count 9

The plaintiff incorporates the allegations of this complaint into this count as though recited herein.

Compensatory, punitive and exem-plary damages in the amount of $23,520,000.00 for emotional Stress and Distress for the loss of medical treatment/ care for being forced to recover on my own over the 15 hours naturally as opposed to the roughly 3 hours by treatment with oxygen for the CO asphyxiation or over dosing on sleeping pills that was not provided by the Ambulance or Hospital to be collected jointly and severally from Leason, Pfeiffer, Mondelli, Dougherty, Diano, L. Simon, Muller,  Romano and Ambulance and Hospital staff and then treble damages for RICO violations. And

Any other relief deemed appropriate by the jury or court or which may be needed from time to time.

### Count 10

The plaintiff incorporates the allegations of this complaint into this count as though recited herein.

145

Compensatory, punitive and exemplary damages in the amount of

$10,260,000.00 for slander, libel and defamation of Character Ambulance and

Hospital to be collected jointly and severally from Leason, Pfeiffer, Mondelli,

Dougherty, Diano, L. Simon, Muller,  Romano and then treble damages

for RICO violations. And

Any other relief deemed appropriate by the jury or court or which may be

needed from time to time.

## Count 11

The plaintiff incorporates the allegations of this complaint into this count as

though recited herein.

Compensatory, punitive and exemplary damages in all prior counts for viola-

tion of my constitutional rights to due process, equal, protections of the law,against

self incrimination, to a fair hearing, to a speedy trial, to competent counsel, to

reasonable bail, to appellate review, against unreasonable searches and seizure,

to a complete defense and all other state and federal rights deemed denied herein

and stated herein in the amounts so stated above to be to be collected jointly and

severally from all defendants and then treble damages for Federal RICO violations

under 18 U.S.C. 1861, et seq.

The plaintiff seeks compensatory, punitive and exemplary damages in the

amount of  $30,000,000.00 for the violation of plaintiff's 1st amendment rights to

access to the courts for depriving him of the ability to prosecute the civil cases that

were pending against the Runnemede and Bellmawr Police at the time the plaintiff

was arrested and locked up and then treble damages for state RICO violations.

Any other relief deemed appropriate by the jury or court or which may be

146

needed from time to time.

That is, The plaintiff seeks an order from the court in accordance with Thompson v Whitman, 18 Wall (85 U.S.) 457, 467-469, that the plaintiff's criminal trial and all orders from said trial are in fact void since the Defendant Judges lacked /lost/usurped jurisdiction over the plaintiff's criminal charges as to both the Subject and/or the person of the plaintiff or for violations of Mandates they failed to comply with.

Wherefore, the plaintiff hereby states, attests and affirms before Almighty God as his witness that the forgoing statements of facts are true and correct and that he may be punished under the law if any are willfully false.

Dated:                                                          /s/ John E. Reardon
                                                                John E. Reardon, Plaintiff